*In re* MARRIAGE OF LINDA DEPEW, Petitioner-Appellee, and BALLARD DEPEW, Respondent-Appellant.

Fifth District   No. 5—92—0211

Opinion filed July 9, 1993.

Alan C. Downen, of McLeansboro, for appellant.

John W. Sanders, of Sanders & Sanders, of Marion, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Ballard Depew (hereinafter respondent) appeals from the June 18, 1991, and February 26, 1992, orders of the circuit court of Williamson County. Because we find that the June 18, 1991, order finding contempt was not final and appealable, we hold that this court is without jurisdiction to hear this appeal and remand the case to the circuit court. For instructive purposes only,. we will set forth the factual background and legal reasoning behind our decision that we are without jurisdiction in the instant case.

The record indicates that the marriage of respondent and Linda Depew (hereinafter petitioner) was dissolved by the circuit court of Williamson County on June 28, 1990. Pursuant to the judgment of dissolution, respondent was granted custody of the two minor children: Cindy, then age 16, and Shawn, then age 13. The record further indicates that the proceedings leading up to the judgment of dissolution were highly acrimonious, that temporary custody had been awarded to respondent, and that there were numerous problems with enforcing the temporary visitation which was awarded to petitioner. The judgment of dissolution provided in pertinent part that petitioner was entitled to visitation with Shawn every other weekend and that petitioner was to pick her son up for visitation on those weekends from respondent's home on Fridays at 5:15 p.m. Finally, the record

indicates that petitioner filed a petition to modify certain visitation provisions contained in the judgment of dissolution in September 1990, when she decided to move from Williamson County, Illinois, to the Cincinnati, Ohio, area.

Petitioner also filed a petition for rule to show cause on November 19, 1990. At this time, the petition to modify was contested by respondent and had not yet been ruled upon by the court. The petition for rule to show cause alleged that Shawn visited petitioner on the weekend of September 21 through 23, but that when petitioner arrived at respondent's home to pick up Shawn for the next visitation weekend on October 5, 1990, Shawn refused to leave with her for visitation. Petitioner also alleged that she returned to respondent's home on October 6, 1990, but the minor son, Shawn, again refused to accompany her for visitation. Petitioner alleged that respondent was present at his home at said time and discouraged Shawn from going with petitioner for visitation. Moreover, the petition alleged, Shawn informed petitioner that he would not be available for visitation during his Thanksgiving school holiday, although the judgment of dissolution provided that petitioner was entitled to visitation with Shawn for one-half of the Thanksgiving holiday. Petitioner also alleged in the petition for rule to show cause that respondent violated the judgment of dissolution in that he failed to inform petitioner of two separate hospitalizations of the minor daughter Cindy until one to two days after the fact, and that he did not inform petitioner about the treatment or care given to Cindy during her hospitalizations. Finally, petitioner alleged that respondent violated the judgment of dissolution in that he failed to provide petitioner with a copy of the school schedule for the minor children and failed to reimburse petitioner for $200 in medical bills. In her prayer for relief, petitioner asked that a rule to show cause be entered as to why respondent should not be held in contempt for violating the June 28, 1990, judgment of dissolution. A rule to show cause was entered by the court on February 7, 1991, and counsel for petitioner filed an affidavit for attorney fees on March 7, 1991.

The petition to modify visitation and the rule to show cause were heard on March 7, 1991. Petitioner testified that she was requesting modification of the visitation schedule to one three- or four-day weekend per month based on the school holidays which Shawn would have each month, because of the distance she had to travel from Cincinnati for visitation. She moved to Cincinnati to be closer to her mother and sister and because of a job opportunity. Petitioner stated that she filed the petition for rule to show cause on November 19, 1990, because Shawn had refused to go on scheduled visitation with her on the

weekend of October 5, 1990, and had told her he would not go on visitation during the coming Thanksgiving holiday. She did not know if respondent was home when she attempted to pick her son up on October 5, but she did see respondent at the home when she again attempted to pick up Shawn the next day. Shawn told her that he was not going and that his father had told him that he did not have to go.

Petitioner stated that visitation periods in July, August, and September 1990 had gone well and that Shawn appeared to enjoy himself unless he spoke with his father on the phone. Since moving to Cincinnati, however, petitioner has not been able to exercise her visitation with Shawn. Petitioner has spoken with respondent about arrangements for visitation after she filed the petition to modify and testified that respondent had told her that it was none of her business, that he was not going to talk with her about it, and that he was not going to make Shawn go. She testified that when she is speaking with Shawn on the phone, she has heard respondent in the background telling Shawn, "you don't have to go," "tell her you don't have to go," and "tell her it's none of her business."

Shawn Depew testified that he would be 15 years old on March 27, 1991, and is a freshman in high school. Shawn testified that he had problems with the proposed modification to visitation with his mother because he wants to get a job during the summer and believes that 10 weeks of visitation is too long. In the fall he wants to play football and go deer hunting on the weekends and does not want to miss school activities or meetings. Shawn also feels that the trip to Cincinnati is too long and stated that he does not know anybody in Cincinnati. Shawn stated that visitation with his mother was not too bad when she was living in Marion, Illinois.

Shawn did recall an incident which occurred in the summer of 1990 when petitioner grabbed his shoulders and started shaking him when Shawn told her he wanted to call his father. Shawn testified that when he told his mother he was going to go over to his aunt's house to call his father, she slapped him and told him he was going nowhere. Shawn left the house anyway and called his father.

Shawn testified that he refused to go with his mother for the existing visitation schedule on two or three occasions because there were other things he needed to do. Shawn stated that his father told him that he should go visit his mother on the weekends whenever he is supposed to go. He has spoken to his father's lawyer about this problem and was told that his father could be put in jail for failure to obey the court's order. Shawn said he would not want to see that happen but stated that his father did not have anything to do with it.

Shawn stated that this year he and his father and Cindy had already planned to go to his aunt and uncle's house in Kentucky for spring break, and so he did not want to go for visitation with his mother. He also admitted that he did not visit with his mother for Christmas or Thanksgiving. The last time Shawn visited with his mother was in October when she took him to St. Louis for one night.

Respondent testified that he did not recall seeing petitioner on either October 5 or 6 when she came to his home to pick Shawn up for visitation. Prior to the time petitioner came to the house, respondent spoke with Shawn regarding visitation with petitioner. Shawn told respondent that he did not want to go for the weekend with his mother, and respondent testified that he advised Shawn that it was important for him to keep the relationship with his mother going and that he should go and visit with her. Shawn got belligerent and again stated that he did not want to go. At no time did respondent tell Shawn that he did not have to go or that he should not go on visitation with petitioner.

Respondent testified that he had a conversation with Shawn about the family's plans for Thanksgiving during the weekend before the holiday. Respondent told Shawn that he was going to have Thanksgiving dinner with his fiancee and her children. Shawn told respondent that he could not be a part of that because he had to go to Cincinnati. Later in the week Shawn decided that he did not want to go to Cincinnati and would rather be at home, and respondent testified that he told Shawn that he was obligated to spend Thanksgiving with his mother. Shawn told his father that it did not matter because he was not going. Respondent testified that he has gotten into shouting matches with Shawn about visitation before but "backs off" when Shawn winds up crying. Respondent did not speak with petitioner about visitation during the weekend of October 5 or prior to the scheduled Thanksgiving visitation.

Respondent testified that the reason Shawn is not going with his mother for visitation is because it is "his choice." Respondent denied telling petitioner that it was Shawn's choice and that he did not have to go. He leaves the arrangements for visitation to petitioner and Shawn.

Respondent believes that he cannot make Shawn go on visitation but admitted that he could "make" Shawn do his homework and that he would teach Shawn not to take drugs or go out drinking. He also stated that he would force Shawn to go to school even if Shawn refused to do so. Respondent believes that it is Shawn's choice to go but denied that either he or his attorney has ever told Shawn that it

was Shawn's choice whether he goes with his mother for visitation. He stated that several other people had told Shawn it was his choice to go. He did tell Shawn that he had a choice to make and that he has to pay the penalty behind the choice he makes. Respondent admitted that on a prior occasion he had been before a judge who had told him that Shawn had to go on visitation.

Respondent testified that on June 10, 1990, the police had to assist Shawn to go with petitioner for visitation because he did not want to go. The officers served respondent with a court order to relinquish custody. Respondent told the officers that he was not holding the boy against his will, that it was Shawn's choice, and that he was free to go. Shawn refused to go with the officers, and respondent told them that it looked like they were going to have to arrest Shawn. The officers forcibly placed Shawn in the police car and took Shawn to the courthouse where he was met by petitioner. Shawn ran away from petitioner that same night but completed his visitation with petitioner later that week. Respondent admitted that petitioner did not get to see the children for visitation on either the Labor Day or Columbus Day holidays in 1990.

Petitioner called attorney Jean Dibble to testify as to the reasonableness of the $1,720 in attorney fees claimed by counsel for petitioner. Respondent objected to the testimony because the petition for rule to show cause did not include a request for attorney fees to be paid by respondent in the prayer for relief. The court took the matter of entitlement to attorney fees under advisement but allowed petitioner to present evidence as to the reasonableness of the fees claimed.

Attorney Dibble testified that she has practiced in Illinois for seven years concentrating in the areas of domestic relations and collections and has handled matters pertaining to visitation problems and petitions for rule to show cause. She is familiar with the hourly rate for attorney fees charged by other attorneys in the local area and opined that $80 per hour for out-of-court time and $100 per hour for in-court time is reasonable. She has reviewed the affidavit for attorney fees filed by counsel for petitioner and the bill for services rendered to petitioner and opined that the time spent by counsel on the matter was reasonable.

The trial court entered an order on June 18, 1991, finding that respondent willfully refused to obey the June 28, 1990, judgment of dissolution of marriage and ordered that respondent is in contempt of court for willfully refusing to obey the judgment of dissolution. The court further stated:

"It is not the child's choice to go on visitation or not, the custodial parent is under order to see that a scheduled visitation occurs. It is contemptuous to suggest as Mr. Depew did that compliance by the son is a matter of choice."

The court further ordered that a hearing be held to determine reasonableness of fees claimed due petitioner. Respondent filed a motion to vacate on July 17, 1991.

The trial court heard the motion to vacate and petitioner's motion for attorney fees on August 21, 1991. The court noted that because attorney fees were not pled in the petition for rule to show cause it would rehear the matter of attorney fees. Attorney Dibble again testified as to the reasonableness of the fees charged by counsel for petitioner and reviewed the revised fee statement forwarded to petitioner on August 21, 1991. Dibble opined that the $1,720 in fees for prosecuting the petition for rule to show cause and the $620 in fees charged for subsequent defense of the contempt order were reasonable.

Respondent stated in his motion to vacate that the order finding contempt was not valid because it did not set forth the previous order violated, the specific act or acts for which respondent is being held in contempt, and the grounds supporting the finding of contempt. Moreover, respondent noted, the order finding contempt does not state whether respondent is in indirect civil contempt or indirect criminal contempt. Respondent argued that he cannot be held in indirect civil contempt because the acts complained of are already passed and he has no means to purge himself of contempt, nor does the order set forth the means by which the respondent may purge himself of contempt, as is required of a civil contempt order. Thus, respondent concludes, the contempt order must be for indirect criminal contempt, and if so, respondent has been deprived of his due process rights because the burden was on respondent at the hearing to show cause why he should not be held in contempt, the court did not advise him that he had a right not to testify based on the privilege of self-incrimination, and respondent was not advised that he was entitled to have the charges in the petition proved beyond a reasonable doubt. Respondent also argued that he could not be found in either indirect civil or criminal contempt because there was no testimony at the hearing that respondent's conduct was willful.

The court noted at the hearing on the motion to vacate that it did not believe at the time of the hearing on the order to show cause that it was dealing with indirect criminal contempt. The court also noted that petitioner had asked the court to order respondent jailed but the

court did not consider that remedy because its intention at the time was merely to make respondent aware of the potential seriousness of his conduct in suggesting to his son that he could refuse to go along on visitation as long as it was Shawn's idea and not his own.

The court found in its February 26, 1992, order that respondent was determined to be in contempt of court for willfully refusing to obey the June 28, 1990, judgment of dissolution of marriage, that respondent had the opportunity to file a response to the rule to show cause, and was given notice of the hearing, that a hearing was conducted on the rule to show cause, and that respondent was well represented by counsel at the hearing. The court determined that $1,000 is a fair and reasonable amount of attorney fees to be reimbursed to petitioner pursuant to section 508 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1991, ch. 40, par. 508). The court denied the motion to vacate and ordered respondent to pay $1,000 to petitioner for reimbursement of her attorney fees within 30 days.

On appeal respondent challenges the legal sufficiency of the order finding contempt and argues that the court's finding that respondent was in willful contempt was against the manifest weight of the evidence. Respondent also maintains that the order finding contempt could only have been for criminal contempt because the attorney fees awarded were in punishment for past acts and the order did not provide respondent with the means to purge his contempt, as a civil contempt order would have required.

Civil contempt is coercive in nature rather than punitive; the finding of civil contempt results from failure to do something which the court has ordered for the benefit or advantage of another party to the proceeding, and the court acts to compel the contemnor to obey the order for the benefit of that other party. (*Pryweller v. Pryweller* (1991), 218 Ill. App. 3d 619, 628, 579 N.E.2d 432, 439.) In civil contempt proceedings, the contemnor must have the opportunity to purge the contempt, *i.e.*, be provided with the "keys to his cell" even after he has been imprisoned, and must also have the power to comply with the order. (*Pryweller*, 218 Ill. App. 3d at 633, 579 N.E.2d at 442.) In contrast, criminal contempt is an act committed against the majesty of the law in disrespect of the court or its process, and the court acts to preserve its dignity by punishing the wrongdoer. (*Pryweller*, 218 Ill. App. 3d at 629, 579 N.E.2d at 439.) Criminal contempt sanctions are imposed for the purpose of punishing past misconduct. (*In re Marriage of Betts* (1990), 200 Ill. App. 3d 26, 43, 558 N.E.2d 404, 415.) The test for determining whether contempt proceedings are criminal or civil in nature is the dominant purpose for which sanctions

are imposed, and any incidental results or benefits of imposing the sanctions are of no consequence in making this determination. *Betts*, 200 Ill. App. 3d at 47, 558 N.E.2d at 418.

Although respondent characterizes the attorney fees award as "punishment" and argues accordingly that the June 18, 1991, order found criminal contempt, the February 26, 1992, order clearly states that the $1,000 in attorney fees were awarded to petitioner pursuant to section 508 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1991, ch. 40, par. 508), and not as a remedy requested by petitioner in the petition for rule to show cause or as a sanction imposed by the court. We must therefore conclude that the trial court failed to impose any sanction in the instant case, and thus we have no vehicle for determining whether the finding of contempt was civil or criminal.

Moreover, a contempt order is not appealable until the trial court imposes a sanction. (*In re Marriage of Ruchula* (1991), 208 Ill. App. 3d 971, 977, 567 N.E.2d 725, 729.) Because no sanction was here imposed by the trial court, we hold that the June 18, 1991, order was not final and appealable under Supreme Court Rule 301 (134 Ill. 2d R. 301) and that this appeal must be dismissed.

Appeal dismissed.

GOLDENHERSH and RARICK, JJ., concur.