In re Angelica B. WROBEL, Debtor.

Bankruptcy No. 95 B 14869.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

June 12, 1996.

Forrest L. Ingram, Forrest L. Ingram, P.C., Chicago, IL, for debtor.

Lesly L. Datlow, Chicago, IL, pro se.

Jack McCullough, Chapter 13 Trustee, Chicago, IL.

M. Scott Michel, United States Trustee, Chicago, IL.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motions of Lesly F. Datlow ("Datlow") for leave to file a claim and to lift the automatic stay, and on the motion of Angelica B. Wrobel (the "Debtor") for sanctions under 11 U.S.C. § 362(h) and Federal Rule of Bankruptcy Procedure 9020. The Court held a trial on these motions on May 22, 1996. For the reasons set forth herein, the Court hereby grants Datlow's motion to lift the automatic stay so that she may pursue her claim of $3,110.25 against the Debtor. The Court denies Datlow's motion for leave to file a claim and the Debtor's motion for sanctions.

### I. JURISDICTION & PROCEDURE

The Court has jurisdiction to entertain these motions pursuant to 28 U.S.C. § 1334(b) and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. They are core proceedings under 28 U.S.C. § 157(b)(2)(B), (G), & (O).

### II. FACTS & BACKGROUND

The Debtor originally filed a petition under Chapter 13 of the Bankruptcy Code on March 14, 1995 ("Original Chapter 13"). On June 21, 1995, the Court entered an order dismissing the Original Chapter 13 on motion of the trustee. The case was subsequently closed and the trustee discharged on July 14, 1995.

The Debtor filed a second petition under Chapter 13 of the Bankruptcy Code on July 24, 1995 ("Current Chapter 13"). *See* Datlow's Exhibit No. 18. The Debtor submitted a proposed plan under her Current Chapter 13 on August 10, 1995. This plan was subsequently amended on October 24, 1995, and the amended plan was confirmed on November 15, 1995.[1] *See* Debtor's Exhibit No. 9. The last day for filing claims in the Current Chapter 13 was January 9, 1996.

The current motions arose out of post-decree proceedings in the Circuit Court of Cook County, County Department, Domestic Relations Division ("State Court"). On May 26, 1995, Datlow, in her representative capacity as the attorney for the Debtor's ex-husband, John G. Wrobel ("John"), filed an emergency petition to limit removal in State Court to prevent the Debtor from removing her son from the jurisdiction.[2] *See* Datlow's Exhibit No. 4. Judge Aubrey F. Kaplan heard arguments on this motion that same day and entered an order that denied the Debtor permission to remove her son from the jurisdiction. *See* Datlow's Exhibit No. 5. The following day, on May 27, 1995, the Debtor removed her son in violation of Judge Kaplan's order.

On June 13, 1995, Datlow, again in her representative capacity as attorney for

---

1. In addition to these two petitions filed under Chapter 13 of the Bankruptcy Code, the Debtor and her then spouse, John Wrobel, previously filed for relief under Chapter 7 of the Bankruptcy Code on August 26, 1993. *See* Datlow's Exhibit No. 15. That case, which was assigned to Judge Jack B. Schmetterer, was closed on July 12, 1994, after a discharge was ordered on June 23, 1994.

2. The Debtor also alleged that she filed an emergency motion in State Court for removal of her son, Andrew, to enable him to accompany the Debtor to the Philippines and attend the funeral of the Debtor's father. The Debtor, as evidence of this, submitted this motion to this Court. *See* Debtor's Exhibit 1. The copy is not stamped by the State Court and Datlow disputes that this motion was ever filed.

John, filed an emergency petition for a rule to show cause why the Debtor should not be held in contempt of court for her failure to comply with the May 26, 1995 order. *See* Debtor's Exhibit No. 3. After a hearing on that motion on June 15, 1995, Judge Kaplan entered an order holding the Debtor in indirect criminal contempt of court.[3] *See* Datlow's Exhibit No. 8. The order states that the Debtor left the country with knowledge of the May 26, 1995 order. *Id.*

On August 22, 1995, Judge Kaplan held a hearing on sanctions. On the following day, Judge Kaplan entered an order that sentenced the Debtor to 21 days in incarceration and imposed a fine of $350.00. *See* Datlow's Exhibit No. 9 and Debtor's Exhibit No. 4. Judge Kaplan stayed enforcement of the judgment, however, and granted Datlow leave to file a petition for fees incurred in connection with the removal proceedings. *See* Debtor's Exhibit No. 5 and Datlow's Exhibit No. 10.

On January 8, 1996, Judge Kaplan held a hearing on what, if any, fees would be awarded against the Debtor as a sanction for the indirect criminal contempt of court and awarded Datlow $3,110.25 in attorneys' fees. *See* Datlow's Exhibit No. 11 and Debtor's Exhibit No. 10. The award in the form of an order was entered on January 10, 1996, one day after the deadline for filing claims in the Debtor's Current Chapter 13. *See* Datlow's Exhibit No. 12 and Debtor's Exhibit No. 11. On January 12, 1996, Judge Kaplan entered an order amending the January 8 order to reflect that the fees had been awarded pursuant to section 508(b) of the Illinois Marriage and Dissolution Act. *See* Datlow's Exhibit No. 13 and Debtor's Exhibit No. 12. These fees were the only penalty assessed against the Debtor as a result of the contempt finding—Judge Kaplan never reinstated the sentence nor the fine originally ordered on August 22, 1995. On March 15, 1996, Datlow filed motions for leave to file a claim and to lift the automatic stay. *See* Debtor's Exhibit No. 15.

The Debtor asserts that throughout these proceedings, Datlow was aware that the Debtor had filed the Current Chapter 13. In support of this allegation, the Debtor submits her response to Datlow's petition for Attorney's Fees, which was filed in State Court on September 26, 1995. *See* Debtor's Exhibit No. 7. In that pleading, the Debtor asserted that "petitioner and respondent were forced to file a Chapter 7 bankruptcy and [the Debtor] has filed a Chapter 13 in an attempt to save her home." *Id.* at ¶ 16. The Debtor also testified that she delivered to her state court attorneys a copy of her Current Chapter 13 petition to be delivered to Datlow. No testimony was submitted that those attorneys had, in fact, delivered same to Datlow. The Debtor, however, testified that she saw a copy of the Current Chapter 13 petition among Datlow's papers at a subsequent hearing before the State Court. The Debtor, however, could not explain how she knew the documents were copies of the Current Chapter 13 petition. The Debtor seeks damages, costs, and fees against Datlow under section 362(h) claiming a willful violation of the automatic stay of section 362(a).

Datlow asserts and testified at trial that she was only aware of the Debtor's Original Chapter 13, and that she did not become aware of the Current Chapter 13 until the Debtor stated that she had filed the Current Chapter 13 in open court during the January 12, 1996 hearing before Judge Kaplan after the bar date for filing claims had passed. In support of her assertion she notes that she was never listed as a creditor in the Current Chapter 13 and thus never received notice from the Court or the Debtor regarding the Chapter 13 proceedings. Likewise, she asserts and testified that when she asked the Debtor's state court attorneys whether the Debtor was currently in bankruptcy, Datlow was advised that the Original Chapter 13 case had been dismissed. They did not men-

---

**3.** Indirect contempt of court is a violation of a court's order outside of the courtroom and is dependent upon evidence of which the judge has no personal judicial notice. *People v. Ramsell,* 266 Ill.App.3d 297, 299, 203 Ill.Dec. 825, 827, 640 N.E.2d 975, 977 (2d Dist.1994). Direct contempt of court is a violation of a court's orders within the presence of the judge and may also be awarded when a party admits an act of indirect contempt in the presence of the Judge. *In re Marriage of Marshall,* 278 Ill.App.3d 1071, 215 Ill.Dec. 599, 606–607, 663 N.E.2d 1113, 1120–21 (3d Dist.1996); *Ramsell,* 266 Ill.App.3d at 299, 203 Ill.Dec. at 827, 640 N.E.2d at 977.

tion to her a second Chapter 13 petition had been filed by the Debtor's bankruptcy attorney. She maintains that she never received a copy of the Debtor's bankruptcy petition from the Debtor or her attorneys. Datlow further asserts that her actions in obtaining the award of attorneys' fees from the State Court are excepted from the automatic stay of section 362(a) under section 362(b)(1) because the award was made incidental to the State Court's criminal contempt power and mandated by section 508(b) of the Illinois Marriage and Dissolution Act.

### III. *DISCUSSION*

Upon the filing of a petition under the Bankruptcy Code, 11 .U.S.C. § 362(a) provides broad protections for the Debtor against the collection of all claims by creditors of the Debtor. Section 362(a)(1) specifically stays the commencement or continuation of any "judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the bankruptcy case." 11 U.S.C. § 362(a)(1). Section 362(b), however, provides certain statutory exceptions to the automatic stay. Pursuant to 11 U.S.C. § 362(b), the filing of a bankruptcy petition does not stay "the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1). The exception to the stay pursuant to section 362(b)(1) only arises if the proceeding against the debtor is criminal in nature. *Swan v. Dervos (In re Dervos)*, 37 B.R. 731, 733 (Bankr.N.D.Ill.1984); *see also Woodside v. County of Williamson, Illinois (In re Woodside)*, 161 B.R. 969, 970 (Bankr.S.D.Ill.1994).

**A. Datlow's attorneys' fees were awarded as part of a State Court criminal contempt proceeding and, as such, are excepted from the stay pursuant to 11 U.S.C. § 362(b)(1).**

Section 508(b) of the Illinois Marriage and Dissolution Act states that:

In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without cause or justification, the court shall order the party against whom the proceeding is brought to pay the costs and reasonable attorney's fees of the prevailing party.

750 ILCS 5/508(b). Section 508(c) of the Illinois Marriage and Dissolution Act allows the court to order the fees and costs paid directly to the attorney, who may then enforce such an order in his or her name. 750 ILCS 5/508(c).

Section 508(b) is a mandatory provision that requires a trial court to order a party who has without justification failed to comply with a court order, to pay costs and reasonable attorneys' fees incurred by their spouse in relation to the enforcement of that order. *In re Marriage of Sanda*, 245 Ill. App.3d 314, 319, 184 Ill.Dec. 186, 189, 612 N.E.2d 1346, 1349 (2d Dist.1993); *In re Marriage of Walters*, 238 Ill.App.3d 1086, 1096, 178 Ill.Dec. 176, 186, 604 N.E.2d 432, 442 (2d Dist.1992); *In re Marriage of Chenoweth*, 134 Ill.App.3d 1015, 1018, 89 Ill.Dec. 922, 925–26, 481 N.E.2d 765, 768–69 (5th Dist. 1985). "Under section 508(b), a trial court has no discretion as to whether to award fees and costs, if it finds that the underlying failure to comply with an order was without cause or justification." *Sanda*, 245 Ill. App.3d at 319, 184 Ill.Dec. at 189, 612 N.E.2d at 1349. A court only has discretion over the amount of reasonable attorney's fees. *Id.*

"Civil contempt is coercive in nature rather than punitive; the finding of civil contempt results from failure to do something which the court has ordered for the benefit or advantage of another party to the proceeding, and the court acts to compel the contemnor to obey the order for the benefit of that other party." *In re Marriage of Depew*, 246 Ill.App.3d 960, 966, 186 Ill.Dec. 482, 487, 616 N.E.2d 672, 677 (5th Dist.1993). "In contrast, criminal contempt is an act committed against the majesty of the law in disrespect of the court or its process, and the court acts to preserve its dignity by punishing the wrongdoer." *Id.* "Criminal contempt sanctions are imposed for the purpose of punishing past misconduct." *Id.*

In the current instance, Judge Kaplan determined that the Debtor had com-

mitted criminal contempt and punished the Debtor by awarding attorneys' fees to Datlow. This is illustrated by the fact that the sanctions were not intended to compel compliance but to punish the Debtor for disregarding the State Court's order of May 26, 1995. According to the January 12, 1996 order, the fees awarded on January 8, 1996 and entered pursuant to an order dated January 10, 1996, were mandatory fees because they were awarded pursuant to section 508(b) of the Illinois Marriage and Dissolution Act.[4] The fee award ultimately became the only sanction entered against the Debtor because Judge Kaplan never reinstated his original 21 day sentence and $350.00 fine against her. As such, the fee award falls within the exception to the automatic stay found in section 362(b)(1) of the Bankruptcy Code.[5]

**4.** This Court cannot, as the Debtor invites, reanalyze the original award and find that Judge Kaplan did not really intend the fee award to be mandatory pursuant to section 508(b). The order of January 12, 1996 clearly states that the contempt award was made pursuant to section 508(b). Moreover, this Court has no power to overturn that holding. *See* 28 U.S.C. § 1738. In addition, the Rooker–Feldman doctrine makes it clear that the decisions of state courts may not be reviewed by the lower federal courts. *See generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *see also Levin v. Attorney Registration and Disciplinary Comm'n of the Supreme Court of Illinois*, 74 F.3d 763, 766 (7th Cir.1996) ("The Rooker–Feldman doctrine dictates that federal courts lack jurisdiction to review decisions of state courts."). "Inferior federal judges lack jurisdiction to review the judgments of state courts, which are open to question, if at all, only in the Supreme Court of the United States under 28 U.S.C. § 1257." *Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir.1995).

**5.** Even if this Court found that the proceedings did not fall within section 362(b)(1) of the Bankruptcy Code, the Debtor failed to prove that Datlow willfully violated the automatic stay because the Debtor failed to prove by a preponderance of the evidence that Datlow had knowledge of the Current Chapter 13 petition. If a person is found to have willfully violated the automatic stay, the bankruptcy court may award sanctions against that individual. Section 362(h) of the Bankruptcy Code provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages,

## B. The Court is without power to waive the deadline for filing a claim against the estate and as such cannot grant Datlow leave to file her claim.

██ 11 U.S.C. § 501 governs the filing of proofs of claim. Section 501 allows a creditor to file a timely proof of claim, and allows the debtor or the trustee to file such a proof of claim if the creditor fails to do so. Fed.R.Bankr.P. 3002 limits the time in which such a proof of claim may be filed. Fed.R.Bankr.P. 3002(c) requires a claim to be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Bankruptcy Code. The last date for filing claims in the Debtor's Current Chapter 13 was January 9, 1996.

 Fed.R.Bankr.P. 3002(c) provides for exceptions to this deadline for filing

including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). Specific intent is not required for a finding of a willful violation of the automatic stay. It is sufficient that the party acted in violation of the automatic stay with knowledge of the pending bankruptcy case. *Price v. United States (In re Price)*, 42 F.3d 1068, 1071 (7th Cir.1994). To obtain relief under section 362(h), the Debtor needs to show that Datlow had knowledge of the Current Chapter 13 and acted to exercise control over property of the estate or the Debtor in violation of the automatic stay.

The Debtor has failed to show, however, that Datlow had knowledge of the pending bankruptcy case. The Debtor's assertion that she had "filed a Chapter 13 in an attempt to save her home" is insufficient to put Datlow on notice of the Debtor's Current Chapter 13. In light of the multiple Chapter 13 filings, this statement was ambiguous and standing alone does not prove that Datlow had knowledge of the Current Chapter 13. Likewise, the Debtor presented no evidence that her state court or bankruptcy attorneys mailed or otherwise delivered to Datlow a copy of the Current Chapter 13 petition or advised her either orally or in writing of its pendency. The Debtor's uncorroborated and obviously biased testimony that she had seen the Current Chapter 13 petition in Datlow's possession was likewise inconclusive because the Debtor did not indicate how she conclusively knew the papers were the Current Chapter 13 petition and not the Original Chapter 13 petition or other related documents. Because the Debtor failed to show that Datlow had knowledge of the Current Chapter 13, she failed to prove Datlow's willful violation of the automatic stay.

claims, none of which apply in this case.[6] Fed.R.Bankr.P. 9006, which governs the computation of time and the bankruptcy court's power to grant extensions of time, likewise does not provide for the extension of time in this case. Fed.R.Bankr.P. 9006(b)(3) specifically limit's the court's powers to grant extensions for late claims to the enumerated exceptions under Fed.R.Bankr.P. 3002(c). Because none of these exceptions apply herein, the Court is without power to waive the deadline for filing claims. *See generally In re Tucker*, 174 B.R. 732 (Bankr.N.D.Ill.1994); *In re Chirillo*, 84 B.R. 120 (Bankr.N.D.Ill.

6. Fed.R.Bankr.P. 3002(c) also allows late filed claims if the claim falls within one of the following five exceptions:

(1) On motion of the United States, a state, or subdivision thereof before the expiration of such period and for cause shown, the court may extend the time for filing of a claim by the United States, a state, or subdivision thereof.
(2) In the interest of justice and if it will not unduly delay the administration of the case, the court may extend the time for filing a proof of claim by an infant or incompetent person or the representative of either.
(3) An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property.
(4) A claim arising from the rejection of an executory contract or unexpired lease of the debtor may be filed within such time as the court may direct.
(5) If notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of the notice.
(6) In a chapter 7 liquidation case, if a surplus remains after all claims allowed have been paid in full, the court may grant an extension of time for the filing of claims against the surplus not filed within the time herein above prescribed.

Although Datlow's claim, which is an unsecured claim that arose as a result of a judgment, could arguably fall into the category of exceptions in Fed.R.Bankr.P. 3002(c)(3), she failed to file her claim within 30 days after the date on which the judgment became final. The claim became final on January 12, 1996, when Judge Kaplan entered his final order regarding this matter. Datlow filed her motion for leave to file a claim on March 31, 1996—well over 30 days later. As such, Datlow cannot avail herself of

1988).[7] As such, the Court cannot extend the time in which Datlow may file her claim or to treat a late filed claim as if it were timely filed for purposes of allowance and treatment under the plan confirmed in the Current Chapter 13.

## C. The Court finds cause to lift the automatic stay and allow Datlow to collect her claim outside of the bankruptcy court.

■ A bankruptcy court may modify the automatic stay "for cause, including the lack of adequate protection of an interest in

this exception and none of the other five exceptions are applicable in this case.

7. Some courts have held that if there was improper notice, the court may create an equitable exception under 11 U.S.C. § 105. *See, e.g., In re Anderson*, 159 B.R. 830 (Bankr.N.D.Ill.1993). Section 105, however, is merely a vehicle to carry out the otherwise provided powers of the bankruptcy court. *See, e.g., In re Lloyd*, 37 F.3d 271, 275 (7th Cir.1994). Section 105 may not be used to create new law. "The bankruptcy court does not have 'free floating discretion,' to create rights outside the Code [citation omitted], but the court may exercise its equitable powers in a manner consistent with the Code." *Lloyd*, 37 F.3d at 275; *see also In re Chicago, Milwaukee, St. Paul and Pacific R.R. Co.*, 791 F.2d 524, 528 (7th Cir.1986). More importantly, "section 105 does not authorize relief inconsistent with more specific law." *American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.)*, 885 F.2d 621, 625 (9th Cir.1989). This is because "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988) (holding that bankruptcy court cannot use equity powers to confirm plan that violates "absolute priority rule," even though plan was otherwise "fair and equitable"); *see also Bear v. Coben (In re Golden Plan of California, Inc.)*, 829 F.2d 705, 713 (9th Cir. 1986) ("bankruptcy court's equitable powers must be strictly confined within the prescribed limits of the Bankruptcy Act"); *Johnson v. First National Bank*, 719 F.2d 270, 273 (8th Cir.1983) ("Although a bankruptcy court is essentially a court of equity, [citation omitted] its broad equitable powers may only be exercised in a manner ... consistent with the provisions of the Code"), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Thus, to the extent that other courts have granted an equitable exception, in light of the clear mandate of the Bankruptcy Code and Rules, this Court declines to follow.

property of such party in interest." 11 U.S.C. § 362(d). "Cause" is not defined in the Bankruptcy Code, and as such, has no clear meaning and must be determined on a case by case basis. *International Business Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731, 735 (7th Cir.1991). The automatic stay may be modified when "equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems." *Id.*

■ The Seventh Circuit has adopted a three prong "balancing of the equities" test to determine whether cause exists to modify the stay. The bankruptcy court must determine (1) whether any great prejudice will result to either the bankruptcy estate or the debtor if the stay is modified, (2) whether the hardship to the creditor if the stay is not lifted outweighs the hardship of the debtor, and (3) whether the creditor has a likelihood of prevailing on the merits. *Id.; see also Healthfirst v. Martha Washington Hosp. (In re Martha Washington Hosp.)*, 157 B.R. 392, 395 (N.D.Ill.1993); *In re Pro Football Weekly, Inc.*, 60 B.R. 824, 826 (N.D.Ill.1986).

In this case, if the automatic stay is lifted, Datlow will be able to pursue her claim for $3,110.25. This would be prejudicial to the Debtor because the bar date for filing claims has already passed, but would not affect the estate. Datlow would otherwise be precluded from recovering her unscheduled claim. Denial of the stay lift, however, would permit the Debtor, who committed the contemptuous act that gave rise to this fee award, to receive a windfall. Denial of the stay modification would be especially inequitable in light of the fact that the Debtor conspicuously failed to give notice of her Current Chapter 13 to the State Court and Datlow until her first State Court appearance after the deadline for filing claims had passed. The fees awarded Datlow are now final and not subject to further appeal.

Furthermore, the State Court also has an interest that must be weighed against the potential prejudice to the Debtor. This fee award arose because the Debtor committed an act of criminal contempt when she refused to comply with the State Court's order.

Judge Kaplan was required by section 508(b) to impose sanctions in the form of attorneys' fees, and in his discretion determined that this was the only sanction he would award. Thus, if this Court refuses to lift the automatic stay, it would, in effect, functionally eviscerate Judge Kaplan's fee award and render the criminal contempt sanctions meaningless. Comity between the state and federal court systems would needlessly be eroded. Denial of the stay lift would mean that this Court would, in effect, undermine the State Court's inherent and statutory authority to impose sanctions against this Debtor for willful violation of its orders, a result that skates dangerously close to violating the Full Faith and Credit clause of the U.S. Constitution as implemented by 28 U.S.C. § 1738 and is repugnant to the principles of comity. Thus, such equitable considerations weigh heavily in favor of Datlow. *See Fernstrom Storage*, 938 F.2d at 735. The Debtor bears much, if not all, of the responsibility for creating these problems because she performed the original contemptuous acts in violating Judge Kaplan's order of May 26, 1995 and compounded the wrong when she failed to give timely notice to either Datlow or the State Court regarding the bar date for filing claims. *See Id.*

Likewise, Datlow is virtually certain to succeed on the merits. She has a judicial order that requires the Debtor to pay her $3,110.25. If the Debtor attempts to avoid this obligation, Datlow has adequate state law remedies that she may pursue to recover this claim. Thus, this Court finds cause to lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1), and hereby modifies the stay for the limited purpose of allowing Datlow to collect the amount awarded to her as a sanction against the Debtor in the State Court contempt proceedings.

## IV. *CONCLUSION*

For the reasons stated herein, the Debtor's motion is denied. Datlow did not violate the automatic stay when Judge Kaplan awarded her attorneys' fees under 750 ILCS 5/508 because the fees were imposed as sanctions in a state court criminal contempt proceeding, thus exempting them from the automatic stay provisions of the Bankruptcy

Code. The Court is without power to waive the deadline for filing claims, but hereby modifies the automatic stay so that Datlow may recover her claim in the amount of $3,110.25 from the Debtor.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.