NO. 4-04-0881

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: the Estate of JAY E. HAYDEN, Deceased, 

THE PEOPLE OF THE STATE OF ILLINOIS

ex rel. LISA MADIGAN,

Plaintiff-Appellee,

v.

ROBERT B. COCHONOUR, 

Contemner-Appellant, 

and

JAY E. HAYDEN FOUNDATION, WILLIAM WYLDE, and HUGH EUBANK,

Defendants-Appellees. 

)

)

)

)

)

)

)

)

)

)

)   )

Appeal from

Circuit Court of

Cumberland County

No. 85P21

Honorable

Stephen R. Pacey,

Judge Presiding.

JUSTICE MYERSCOUGH delivered the opinion of the court:

Defendant, Robert B. Cochonour, appeals the trial court's September 10, 2004, order finding that defendant remained in contempt pursuant to the court's July 29, 2002, order.  We dismiss in part and affirm in part.

I. BACKGROUND

This is the second time this case has been before us on appeal, and the facts preceding that appeal are more fully set forth in 
In re Estate of Hayden
, No. 4-02-0610 (October 21, 2003) (unpublished order under Supreme Court Rule 23)
.  To summarize, on June 19, 2002, after the trial court allowed defendant to resign as executor of the estate of Jay E. Hayden (Estate), the court ordered defendant to (1) file a final account of his actions as executor, (2) file a current inventory, (3) produce all estate records or documents in his possession or subject to his control or direction, (4) produce all documents described in the Jay E. Hayden Foundation's (Foundation) June 4, 2002, subpoena, and (5) furnish a surety on defendant's June 1985 $2 million bond.  Defendant raised various defenses to complying with the court's order, including fifth amendment privilege (U.S. Const., amend. V), on the basis that he was the subject of a grand jury investigation regarding his conduct as executor of the Estate, attorney-client privilege, and attorney work-product privilege.  On July 22, 2002, the court rejected those defenses and directed defendant to comply with the June 19, 2002, order on July 29, 2002, or risk direct civil contempt.

On July 29, 2002, the trial court found defendant in direct civil contempt for failing to comply with the court's June 19, 2002, and July 22, 2002, orders.  The court sentenced defendant to the Cumberland County jail for an indefinite term, but stayed the order pending an appeal.  The order further provided that defendant could purge himself of contempt by (1) furnishing to the court copies of all estate records retained by him or anyone subject to his control and direction and (2) providing surety on his bond.  The order also contained the following statement:

"20. Because the furnishing of estate records may be sufficient to construct a final account and current inventory as ordered by the [c]ourt, no sanction need be presently imposed with respect to the [c]ourt's orders to file a final account and current inventory."

Defendant appealed the order to this court, asserting that the trial court erred by finding him in contempt for (1) failing to produce retained copies of estate records because the  attorney work-product privilege applied and (2) failing to provide a surety on his executor's bond because defendant asserted his fifth amendment rights (U.S. Const., amend. V).  This court disagreed and affirmed.  
In re Estate of Hayden
, No. 4-02-0610 (October 21, 2003) (unpublished order under Supreme Court Rule 23)
.

According to the trial court's September 10, 2004, order, in January 2003, while the case was pending on appeal, defendant pleaded guilty in Cumberland County case No. 03-DF-1 to felony theft of property exceeding $100,000 from the Estate and the Foundation.  As part of the plea agreement, defendant agreed to answer all questions posed to him by the Attorney General about the Estate and without subpoena testify fully and truthfully at any court hearing, deposition, proceeding, trial, or administrative proceeding involving the Estate.  Also, in June 2003, the court in the Estate case found that defendant breached his fiduciary duty and misappropriated estate funds and entered judgment against defendant in the amount of $5,222,522.10. 

In December 2003, following the appeal, defendant filed a motion asking the trial court for direction on compliance with the orders affirmed by the appellate court and suggested that providing a surety was moot because of his conviction and the June 2003 judgment.  In January 2004, defendant filed a notice of compliance and motion for discharge from the order of contempt asserting that counsel for defendant arranged for the delivery of 2 1/2 boxes to be delivered to the Cumberland County circuit clerk.

The docket entry for a hearing held on January 16, 2004 (we do not have the transcript on appeal), provides, in relevant part, as follows:

"Evidence re: delivery of records, records sealed, ruling on [m]otion for [d]irection--comply with the order.  Surety not moot.  Compliance with production of estate records not yet determined.  [Defendant] ordered to comply with balance of 6/19/02 order and file final account and current inventory."

On February 2, 2004, defendant filed a petition for writ of fairness with memorandum stating that selected copies of the estate records were delivered to the clerk's office and arguing that the order that defendant provide a current inventory and final account violated the fifth amendment.  On February 6, 2004, defendant filed a motion requesting that the court vacate its order directing him to file a final accounting and inventory.

On February 9, 2004, defendant filed a motion for protective order stating that defendant, by a designated custodian, delivered to the clerk of the court two boxes and a sheaf of papers constituting matters subpoenaed by the Cumberland County grand jury in 2002.  Also on February 9, 2004, defendant filed a report to the court explaining the alleged impossibility of defendant obtaining a surety bond.  The motion asserted that defense counsel's paralegal was unable to obtain a surety bond for defendant and that even if defendant completed an application for a surety, completion of the financial-statement section would waive defendant's fifth amendment right against self-incrimination.  In February 2003, the court denied the motion to discharge, petition for writ of fairness, and motion to vacate. 

Defendant subsequently filed numerous additional motions, including a motion to reconsider, a motion for an order permitting secular review, and a rider of explanation.  In July 2004, at the hearing on defendant's compliance with the trial court's orders, defendant refused to answer questions based on his fifth amendment right against self-incrimination.  The court found noncompliance with the orders and reserved sanctions.  

A docket entry of August 13, 2004, stated that on September 10, 2004, the trial court would present findings and rule on sanctions regarding defendant's noncompliance.  In an order dated September 10, 2004 (no transcript of this hearing was provided on appeal), the trial court found that defense counsel attempted to purge defendant of contempt "by proxy or argument."  The court further held that defendant had the ability to purge himself of contempt but "refuses to do so by asserting [f]ifth [a]mendment claims which were denied by the [a]ppellate [c]ourt or not raised by [defendant] in his appeal."  Consequently, the court entered the following order:

"IT IS ORDERED, that:

A. [Defendant] remains in contempt pursuant to the [c]ourt's [o]rder of July 29, 2002.

B. A [b]ody [a]ttachment for [defendant] issue."

This appeal followed. 

II. ANALYSIS

Defendant raises four arguments on appeal: (1) the trial court's order directing defendant to provide a final accounting and inventory constituted testimonial compulsion and was unenforceable absent a grant of immunity, and the civil contempt order relating thereto was punitive; (2) the order holding defendant in direct civil contempt for failing to produce the estate records was punitive and intended to punish defendant for his attorney's lawful refusal to produce the records prior to the first appeal; (3) the order holding defendant in direct civil contempt for failing to provide a surety on his bond was punitive; and (4) defendant did not attempt to assert his fifth amendment rights by proxy.  Defendant also asserts that the fifth amendment rights he asserts in this appeal were not presented to nor ruled upon by this court in the previous appeal.

Defendants, the Foundation and directors of the Foundation, Hugh Eubank and William Wylde, filed a motion to dismiss this appeal, asserting four grounds: (1) that the appeal is untimely because the September 10, 2004, order was not a new order of contempt but a finding by the trial court that defendant had not purged himself; (2) the law of the case doctrine moots the appeal; (3) defendant raises issues that he forfeited by not raising in the prior appeal; and (4) defendant asserts an improper standard of review--
de
 
novo
--and only argues points of law.

A. Final Accounting and Inventory

Defendant first challenges the trial court's order requiring defendant furnish a final accounting and inventory, arguing that the court improperly ruled that defendant could not assert the fifth amendment privilege.  We conclude that we do not have jurisdiction over this issue on appeal.

According to the notice of appeal, defendant appealed the September 10, 2004, ruling pursuant to Supreme Court Rules 304(b)(5) and 305.  Supreme Court Rule 305 addresses stays of judgments pending appeal and does not provide a jurisdictional basis for this appeal.  Official Reports Advance Sheet No. 14 (July 7, 2004), R. 305, eff. July 1, 2004.  Supreme Court Rule 304(b)(5) permits interlocutory appeals without the finding of no just reason for delay for orders of contempt that impose "a monetary or other penalty."  155 Ill. 2d R. 304(b)(5).  

A contempt order that does not impose sanctions is not final and not reviewable.  
In re Marriage of Depew
, 246 Ill. App. 3d 960, 967, 616 N.E.2d 672, 677 (1993); 
Revolution Portfolio, LLC v. Beale
, 341 Ill. App. 3d 1021, 1026, 793 N.E.2d 900, 904 (2003).  Here, in January 2004, the trial court ordered defendant to file a final account and current inventory.  At the July 2004 hearing regarding defendant's compliance with the orders, the parties only discussed the production of estate records and surety issues.  Even so, although the court found noncompliance by defendant, the court expressly reserved the issue of sanctions.  In the September 10, 2004, order, the court found that defendant remained in contempt of the July 29, 2002, order--the order that specifically excluded sanctions for the failure to produce a final account and current inventory.  Consequently, the record contains no evidence that the court sanctioned defendant for failing to produce a final account or current inventory.

Without the imposition of a monetary or other penalty, we do not have jurisdiction over the appeal of this issue.

B. Failure To Produce Copies of Estate Records 

Defendant's second argument relates to the trial court's finding of contempt for defendant's failure to produce selected copies of the records of the Estate.  As the record indicates, defendant gave the original records of the Estate to counsel acting on behalf of the Cumberland County grand jury, but his attorneys kept selected copies of the records.  The court held defendant in contempt for failing to produce these copies and issued the sanction of jail until produced.  The court provided that defendant could purge himself of contempt by "furnishing to the [c]ourt copies of all estate records retained by him or any one subject to his control or direction."  As noted previously, this contempt finding was the subject of the earlier appeal.

Appellees argue that this court lacks jurisdiction of this issue on appeal because the September 10, 2004, order was not a new order of contempt imposing sanctions.  We disagree.  The September order, by its very terms, effectively reimposed the sanctions for failing to produce the copies that were imposed in the July 2002 order.  Because the contempt order imposed sanctions, the order was immediately appealable.  
Depew
, 246 Ill. App. 3d at 967, 616 N.E.2d at 677.  

Turning to the merits, defendant argues that the civil-contempt finding of September 10, 2004, was punitive, not coercive in nature, in that the court attempted to punish him for his counsel's lawful refusal to produce the documents prior to appeal.  Based on the case cited by defendant, 
People v. Marcisz
, 32 Il. App. 3d 467, 334 N.E.2d 737 (1975), 
aff'd
 
in
 
part
 
&
 
rev'd
 
in
 
part
, 
65 Ill. 2d 206, 357 N.E.2d 477 (1976), it appears defendant is arguing that because the contempt finding was punitive, it was actually criminal contempt, which entitled him to certain constitutional protections.  In addition, a large part of defendant's argument is that the trial court and the trustees of the Estate could have and should have obtained the documents by filing the appropriate motion before the court presiding over the grand jury.

However, defendant has forfeited these arguments by not raising them in the earlier appeal.  Under the law of the case doctrine, if a party fails to challenge a legal decision when it has the opportunity to do so, he forfeits the right to challenge the decision at a later time and the decision becomes the law of the case for future stages of the same litigation. 
 
Liccardi v. Stolt Terminals, Inc.
, 178 Ill. 2d 540, 547, 687 N.E.2d 968, 972 (1997); 
Reich v. Gendreau
, 308 Ill. App. 3d 825, 829, 721 N.E.2d 634, 637 (1999).  Because defendant could have raised the issues of criminal versus civil contempt and the issue of the court or trustees obtaining the documents from the grand jury earlier, he has forfeited his right to raise them now.

Even if these issues were not forfeited, defendant also fails to indicate why the fact that the trial court and trustees could have obtained the documents elsewhere is relevant to the finding of contempt.  The court directed defendant to provide to the court any retained copies in his possession or in the possession of anyone subject to his control or direction.  

In addition, the contempt order was properly classified as civil rather than criminal contempt.  The trial court imposed the sanction incarcerating defendant until he complied with the court's order, thereby making the sanction coercive rather than punitive.  See 
Sanders v. Shephard
, 163 Ill. 2d 534, 540, 645 N.E.2d 900, 903 (1994) (holding that conditional, renewable sanction imprisoning father until he produced his missing daughter was coercive rather than punitive where father could "win his release at any time by complying with the order of the court").  

Finally, defendant also appears to claim that he purged himself of the contempt and that the trial court improperly found that defendant attempted to purge himself by proxy.  We disagree.

At the July 2004 hearing, counsel for defendant presented evidence about the documents produced in attempt to purge defendant of contempt.  Defendant would not, however, testify that he had complied with the trial court's order to produce the Estate records or answer any questions regarding his attempts to comply with the court's order, instead invoking the fifth amendment.  Yet, defendant forfeited his ability to invoke the fifth amendment by failing to raise it in the first appeal.  See 
Liccardi
, 178 Ill. 2d at 547, 687 N.E.2d at 972 (failing to challenge a legal decision when having the opportunity to do so forfeits the right to challenge the decision at a later time in the same litigation).  Additionally, we question whether defendant could even assert the fifth amendment privilege.  Defendant, as executor of the Estate, was an agent of the court and answerable to the court as a fiduciary.  As such, defendant was not acting in a personal capacity and the documents were not personal records.  See, 
e.g.
, 
United States v. Hankins
, 565 F.2d 1344, 1349 (5th Cir. 1978) (holding that executor, acting in a representative capacity and as an officer of the court, could not claim a fifth amendment privilege to papers incident to the estate because the papers were not "personal and private").

Consequently, defendant was required to testify that he produced all the records requested (or gave them all to his attorney and no other persons), that he no longer had any records in his possession, and that no other person subject to his control or direction had records in his or her possession.  Clearly, he did not purge himself of contempt in the trial court.  The court's finding therefore was not an abuse of discretion or against the manifest weight of the evidence.

C. Failure To Provide Surety

In June 2002, the trial court ordered defendant to obtain a surety on his June 1985 $2 million bond.  In July 2002, the court found defendant in direct civil contempt for failing to do so.  In July 2004, following the first appeal, the court again found defendant failed to comply with the court's orders but reserved sanctions.  The September 10, 2004, order found that the contempt continued and effectively reimposed the sanctions by adopting the July 2002 sanctioning order.  Consequently, despite appellees' arguments to the contrary, this court has jurisdiction over this issue of the appeal.  See 
Depew
, 246 Ill. App. 3d at 967, 616 N.E.2d at 677.

Defendant appears to argue that because a judgment has now been entered against him in the amount of $5,222,522.10, he will be unable to obtain a surety on his $2 million personal bond because a surety would then immediately be obligated to pay     $2 million toward the judgment.  A surety is "[a] person who is primarily liable for the payment of another's debt or the performance of another's obligation."  Black's Law Dictionary 1482 (8th ed. 2004).  Therefore, defendant argues the contempt order is "past punishment" for not obtaining a surety prior to the entry of the judgment and "present punishment" for failing to pay $2 million of the judgment after entry of the judgment. 

Defendant further argues that his failure to provide a surety was not wilful.  Defendant appears to claim that he cannot obtain a surety because he would have to pay $2 million of the judgment in order to obtain a surety in that amount.  According to defendant, he cannot demonstrate his inability to pay because any testimony he might offer "would tend to incriminate him."  He suggests that the appellees could have shown--but did not-- wilfulness by obtaining defendant's prior tax returns or financial statements by way of a citation proceeding.  We disagree.

Under the circumstances herein, the trial court properly identified its contempt order as civil rather than criminal contempt.  The trial court imposed a sanction incarcerating defendant until he complied with the court's order, thereby making the sanction coercive rather than punitive.  See 
Sanders
, 163 Ill. 2d at 540, 645 N.E.2d at 903.  

The purpose of a civil contempt order is to bring about compliance with the court's order.  
City of Mattoon v. Mentzer
, 282 Ill. App. 3d 628, 636, 668 N.E.2d 601, 606 (1996).  Consequently, a party held in civil contempt must be given a means by which he can purge himself of contempt after he has been imprisoned.  
Mentzer
, 282 Ill. App. 3d at 636, 668 N.E.2d 606.  This implies that the party must possess the power and ability to purge himself--"contempt will not lie when the alleged contemnor, through no fault of his own, is in a position where he cannot comply with the order of the court."  
In re Estate of Shlensky
, 49 Ill. App. 3d 885, 895, 364 N.E.2d 430, 438 (1977) (finding that the trial court imposed a civil sanction for the respondent's failure to release and turn over various assets and accounts because the sanction could be terminated upon compliance). 
 Moreover, a sanction must be vacated when "it is evident that the sanction imposed is no longer fulfilling its original, coercive function."  
Sanders
, 163 Ill. 2d at 541, 645 N.E.2d at 904.  

The contemnor bears the burden of demonstrating that the sanction has lost its coercive effect and will not cause him to comply with the order.  
Sanders
, 163 Ill. 2d at 541, 645 N.E.2d at 904.  The contemnor also bears the burden of proving that failure to comply with the court's order was not wilful.  
People v. Thomas
, 220 Ill. App. 3d 110, 128-29, 580 N.E.2d 1353, 1366 (1991).  To prove that a failure to pay was not wilful, a defendant must show that he does not have the money and that he did not wrongfully dispose of money or assets by which he could have made payment.  
In re Marriage of Logston
, 103 Ill. 2d 266, 285, 469 N.E.2d 167, 175 (1984).  
A finding of contempt is a question of fact that will not be reversed on appeal absent an abuse of discretion or unless it is against the manifest weight of the evidence.  
In re Marriage of Spent
, 342 Ill. App. 3d 643, 653-54, 796 N.E.2d 191, 200 (2003) (affirming trial court's finding that ex-wife's failure to permit ex-husband to have visitation with the parties' minor child was wilful).

Defendant bore the burden of demonstrating that the contempt order lost its coercive effect, and/or that his noncompliance with the order was not wilful.  See 
Mentzer
, 282 Ill. App. 3d at 636, 668 N.E.2d at 606; 
Sanders
, 163 Ill. 2d at 541, 645 N.E.2d at 904.  He failed to do so.

We first note that defendant did not provide a transcript of the September 10, 2004, hearing in the record on appeal.  In fact, in his reply brief, defendant chastised appellees' reference to the September 10, 2004, transcript (which appellees had attached to their motion to dismiss the appeal without first seeking leave to supplement the record) because the 
trial
 
court
 did not include it as part of the record on appeal.  Defendant is incorrect.  The burden is not on the trial court to provide a complete record.  The 
appellant
 bears the burden of presenting a record that is adequate for a determination of the issues raised.  
People v. House
, 202 Ill. App. 3d 893, 908, 560 N.E.2d 1224, 1234 (1990); 
Palmisano v. Connell
, 179 Ill. App. 3d 1089, 1099, 534 N.E.2d 1243, 1250 (1989).  Defendant, as appellant, should have provided the September 10, 2004, transcript on appeal.  When a transcript is not included in the record on appeal, the reviewing court has no basis for holding that a trial court abused its discretion in denying the motion.  
Robinson v. Robinson
, 140 Ill. App. 3d 610, 613, 488 N.E.2d 1349, 1352 (1986); see also 
House
, 202 Ill. App. 3d at 908, 560 N.E.2d at 1235 (noting that "[a]bsent a sufficient record, the court need not consider the allegation").  

Nonetheless, under the authority of Supreme Court Rule 329 (134 Ill. 2d R. 329), we amend the record on appeal to include the September 10, 2004, transcript, a copy of which was attached to appellees' motion to dismiss.  As the transcript reflects, no evidence was presented at the hearing, but the trial court stated its ruling on the "sole issue [of] whether or not [defendant] has purged himself of contempt."  The court found that defendant had not purged himself of contempt and that the only reasons offered by defendant as to why he had not done so were based on arguments previously denied by the court and/or appellate court.  The court also rejected defendant's attempt to purge himself through the efforts of the paralegal.  We find that the reasoning of the court was not against the manifest weight of the evidence or an abuse of discretion.

Specifically, the evidence presented at the July 9, 2004, hearing included an affidavit dated February 5, 2004, from a paralegal asserting that she contacted various insurance agencies to obtain a surety for defendant.  The agency responses varied from an indication that the agency would not issue a surety to other agencies that agreed to fax or mail an application.  

The other evidence presented to the trial court included a copy of an application from Western Surety Company. Defense counsel claimed that completing the financial statement in the application would constitute a waiver of his fifth amendment right against self-incrimination and that defendant could not comply with various paragraphs under the indemnity section of the application.  Defendant refused to testify at the July 2004 hearing, invoking the fifth amendment right against self-incrimination. 

Even assuming defendant could prove his compliance or inability to comply with the order by proxy, the paralegal's affidavit does not establish that no agency would issue a surety, as several indicated they would mail or fax an application.  Further, this court previously rejected defendant's fifth amendment claim that he could not complete the surety without incriminating himself.  Most telling, however, is that defendant presented no evidence of 
his
 attempts to comply with the court's order or that his failure to comply was not wilful.   

Finally, although defendant argues on appeal that the trial court "punished" him for not paying $2 million of the judgment (which, according to defendant, would then have allowed him to obtain a surety or obviated the need for one), defendant presented no evidence to the court that he was unable to pay    $2 million of the judgment or that he had not wrongfully disposed of assets by which he could have paid it.  On these facts, the court's contempt finding was not punitive, but coercive, was not against the manifest weight of the evidence, and was not an abuse of discretion.  Defendant can purge himself of contempt by either obtaining a surety as directed by the court or by demonstrating his inability to do so.

D. Sanctions Not Appropriate

In response to appellee's motion to dismiss, defendant filed a motion for sanctions arguing that the motion was frivolous.  Because we have found the motion to dismiss partially meritorious, the motion is denied.  

E. Additional Motions

Prior to oral argument in this matter, defendant filed a motion to supplement the record to include a transcript of August 1, 2005, proceedings in People v. Cochonour, Cumberland County case No. 03-CF-01, and appellees filed a motion to supplement the record to include a transcript from an August 12, 2005, hearing in the underlying Estate case in the trial court.  Parties may supplement the record on appeal where there are material omissions or inaccuracies or if the record is insufficient to present fully and fairly the questions involved.  134 Ill. 2d R. 329; 
People v. Tackett
, 130 Ill. App. 3d 347, 348, 474 N.E.2d 451, 452 (1985).  Because the documents are not necessary for the resolution of this appeal, the motions to supplement are denied.  Defendant also filed a motion to stay the body attachment, which is denied.

As a final note, defense counsel, Rick Halprin, made numerous disrespectful comments in open court and in several of the pleadings.  These include comments at the July 9, 2004, hearing referencing the "Judge Pacey rule of law," accusations that the judge believed he was entitled to rewrite the United States Constitution, references to the judge's "personal agenda," and the comment at the September 10, 2004, hearing that "[t]his is a joke."  Defendant's motion for an order permitting "secular review" contains the following passage:

"This court divines a higher duty appointing itself 
GUARDIAN OF PROBATE LAW
.  Calmly viewed[,] this [c]ourt has created a morality play in which evil is represented by [defendant] and his attorney Rick Halprin (the devil incarnate).  Halprin and [defendant's] heresy is confirmed by their temporal reliance on the [f]ifth [a]mendment's privilege against self-incrimination embodied in the Constitution of the United States.

Thus this [c]ourt[,] confronted with a potential forensic disaster, to wit the destruction of hundreds of years of case and statutory probate law, experienced an epiphany.  This [c]ourt found a higher power than the [c]onstitution, to wit its authority to supervise appointees.  It is, therefore, understandable that this [c]ourt[,] having found its power to be inviolate[,] would naturally refuse to be cowed by such flimsy authority as the Constitution of the United States.  Hence, this [c]ourt[,] as evidenced by its findings will not be deterred from its mission as keeper of the faith, the Grail that is probate law."

(Rick Halprin did not appear at oral arguments but sent his fellow attorney, who did not handle this matter before the trial court.)  The trial court showed enormous restraint in not sanctioning attorney Halprin. 

III. CONCLUSION

For the reasons stated herein, we dismiss defendant's appeal relating to the order of contempt for failing to provide a final account and inventory and affirm in all other respects.

Dismissed in part and affirmed in part. 

APPLETON and KNECHT, JJ., concur.