In re Douglas Bachman CRITES, Debtor.

Douglas Bachman CRITES, Plaintiff,

v.

STATE OF OREGON EX REL. Mary ROBERTS, Bureau of Labor and Industries, Defendants.

Bankruptcy No. 386–06989psh13.
Adversary No. 96–3057.

United States Bankruptcy Court,
D. Oregon.

Sept. 26, 1996.

---

Michael A. Redden, Portland, OR, for Debtor.

Frederick M. Boss, Assistant Attorney General, Department of Justice, Salem, OR, for State of Oregon.

## MEMORANDUM OPINION

POLLY S. HIGDON, Bankruptcy Judge.

The debtor has filed an adversary proceeding seeking a ruling that an unscheduled general unsecured debt owed to the defendant, State of Oregon Bureau of Labor and Industries, ("BOLI") was discharged under 11 U.S.C. § 1328(a) when he completed his Chapter 13 plan. The parties have submitted this issue to the court through cross motions for summary judgment. I have jurisdiction under 28 U.S.C. §§ 1334(b) and 157(a) and Local District Court Rule 2100–1.

This is a core proceeding in which I may enter a final judgment. 28 U.S.C. § 157(b)(2)(I). I find that the matter may be determined on the motions.

## FACTS

The debtor filed a Chapter 7 on October 11, 1984. Prior to entry of an order of discharge in that case BOLI filed a timely adversary proceeding which included counts under both 11 U.S.C. §§ 523 and 727. It alleged that the debtor, as the sole shareholder of Capitol Dairy Queen, Inc., operated the corporation as his alter ego. In this capacity he obtained the services of approximately 50 employees when he knew that the corporation was insolvent and would not be able to pay wages to those employees as they came due. The complaint further alleged that the debtor had transferred and removed corporate property within one year prior to filing the petition with the intent to hinder or defraud his creditors.

The adversary proceeding remained active for over a year. In April, 1986, BOLI and the debtor entered into a stipulation in which the debtor agreed to entry of a judgment of non-dischargeability in favor of BOLI in the amount of $21,707 plus interest at 7.50% per annum. That judgment was docketed on April 28, 1986. On October 21, 1986 the court entered an order of discharge on behalf of the debtor. The Chapter 7 case was closed on December 5, 1986.

The debtor filed a Chapter 13 petition on December 24, 1986, less than three weeks later. When he filed his Chapter 13 petition the debtor scheduled three priority creditors with claims totaling $22,254 and three unsecured non-priority claimants with debts totaling $1,950. The priority creditors were the United States Internal Revenue Service, The State of Oregon Department of Revenue and the State of Oregon Employment Division. The parties agree that BOLI was not scheduled as either a priority or general unsecured creditor in this case. Therefore, it did not receive formal notice that the Chapter 13 case had been filed.[1] Further, there has

---

1. The debtor does not assert that notice to the    Oregon Department of Revenue or the Oregon

been no evidence presented by either party suggesting that at any time during the Chapter 13 proceedings BOLI had actual notice of that filing. Given the size of the BOLI obligation and the then recent litigation history between the parties, I must assume that the debtor did not intend to provide BOLI with notice of the Chapter 13 case.[2]

The debtor's proposed plan provided that priority creditors would be paid in full and general unsecured creditors would receive 19% of their allowed claims. At the time of confirmation the percentage to general unsecured creditors was reduced to zero. The debtor completed his plan and obtained a discharge under 11 U.S.C. § 1328(a) on September 30, 1993.

On April 13, 1995, in an attempt to collect on the 1986 judgment, BOLI garnished certain of the debtor's funds held by First Interstate Bank and by his employer. At that time the debtor notified BOLI that its obligation had been discharged in the debtor's Chapter 13 bankruptcy. Thereafter the court granted the debtor's motion to reopen his Chapter 13 case for the purpose of filing the instant suit. This adversary proceeding was filed on January 26, 1996.

## LEGAL ANALYSIS

■ The debtor contends that *In re Beezley*, 994 F.2d 1433 (9th Cir.1993) and *In re Ford*, 159 B.R. 590 (Bankr.D.Or.1993) read together:

"established a logical statutory and constitutional balancing test that:

(1) protects an unlisted creditor when the lack of notice deprives him of a meaningful right (to contest dischargeability, *e.g.*) but,

(2) protect's [sic] the debtor's right to discharge where lack of notice to the unlisted creditor was a mere "formal error" which caused no injury."

(Pl's Mem.Supp.Sum.J. at 5)

Based on this analysis the debtor concedes that $3,971.41 of the judgment BOLI obtained, which represents employees' wages

which would have been entitled to priority status in his Chapter 13 case, should be exempted from discharge because the failure to schedule that amount deprived BOLI of the right to have it paid in full under the plan. He contends, however, that since general unsecured creditors received no payments under the plan, the failure to schedule the unsecured debt caused no injury. Therefore that portion of the judgment should be found to have been discharged.

In *Beezley* a Chapter 7 debtor, having failed to schedule a prepetition judgment creditor, attempted to reopen his case to amend his schedules to include it. In denying his motion to reopen the court analyzed 11 U.S.C. § 523(a)(3) under the particular facts and found that such a motion was a pointless exercise. It held that the purpose of § 523(a)(3)(A) was to deny discharge of unscheduled debt if the failure to schedule the debt deprived the creditor of the opportunity to file a timely claim. The purpose of § 523(a)(3)(B) was to deny discharge of an unscheduled debt if the failure to schedule the debt deprived a creditor holding claims for intentional torts the opportunity to file either a timely claim or a timely nondischargeability complaint. In a case like *Beezley*, where the estate had no nonexempt assets and, consequently, the court does not send out notice of a bar date beyond which claims would be treated as untimely, § 523(a)(3)(A) "is not implicated 'because there can never be a time when it is too late "to permit timely filing of a proof of claim"'". *Beezley*, at page 1436, *citing In re Mendiola*, 99 B.R. 864, 867 (Bankr.N.D.Ill. 1989). If an unscheduled debt were for an intentional tort, the language of § 523(a)(3)(B) denied discharge. Adding a creditor to the schedules later would not change the effect of this statute.

In *Ford*, as in *Beezley*, the Chapter 7 debtor had filed what was administered as a no nonexempt asset case; consequently, the court did not send out notice to creditors of a deadline for filing timely proofs of claim.

---

Employment Division constituted notice to the Oregon Bureau of Labor and Industries.

**2.** The holding in this case would not be affected if I found that the lack of notice was unintentional.

After discharge the debtor reopened the case to add an omitted prepetition creditor. The creditor filed an adversary complaint seeking a judgment that the claim was non-dischargeable under § 523(a)(3)(A) and that the debtor's discharge should be revoked.

The court found that the creditor would have prevailed on a complaint to deny discharge under 11 U.S.C. § 727 had she had an opportunity to timely file such a complaint. Nonetheless, declaring itself bound by the holding in *Beezley*, it found that § 523(a)(3)(A) did not deny discharge of the debt. It concluded, however, that "since the plaintiff's debt was unscheduled and she received neither knowledge nor notice of the case in time to successfully challenge the debtor's discharge, procedural due process requires that the plaintiff's debt remained unaffected by the Order of Discharge...." *Id.* at 594.

I do not think that either *Beezley*, or *Ford* to the extent that it follows *Beezley*, is pertinent to the issue before this court. *Beezley* was a case filed under Chapter 7. The court was asked to interpret one of the subsections of § 523(a). These subsections describe those debts which are not included in the discharge from debt which individual debtors otherwise usually receive in Chapter 7 from the bankruptcy court. By its own terms § 523(a) does not apply to debtors, who, as with Mr. Crites, receive a debt discharge under 11 U.S.C. § 1328(a).

The debtor propounds the proposition that *Beezley*, through its interpretation of § 523(a)(3)(A), enunciates a form of "no harm-no foul" rule which can be transposed into any set of bankruptcy circumstances involving a general unsecured creditor who has received no notice of the bankruptcy filing.[3] There are two problems with this proposition. First, *Beezley* was an opinion narrowly written, focusing only on interpreting the technical and confusing language of § 523(a)(3). This subsection applies only under a specific, narrow set of facts. I do not think the opinion was intended to be read outside the narrow confines of its own facts and law.[4]

Second, the debtor's proposition assumes his failure to notify BOLI of his Chapter 13 filing resulted in no harm to it as a general unsecured creditor. He presumes that the only "meaningful right" which a general unsecured creditor in the Chapter 13 process has is the right to file a timely proof of claim which, if allowed, generates plan payments from the debtor. This is an incorrect presumption.

The Chapter 13 process allows general unsecured creditors several procedural rights, most of which, because of the speed with which Chapter 13 plans are before the court for confirmation, must be exercised early in the case. They may object to confirmation of a plan on several different bases, including the plan's lack of feasibility[5], the debtor's failure to file the plan in good faith,[6] the plan's failure to meet the "best interests of creditors" test[7] or to meet the "disposable income test"[8], as well as the right to request modification of a confirmed plan.[9] The debtor's failure to schedule the debt owed to BOLI deprived BOLI of all of these rights. Nor are these rights de minimis. On the contrary, if the court were to sustain the creditor's position under any of these Code sections either its treatment under the plan

---

3. For purposes of his argument the debtor seems conveniently to have forgotten that the *Beezley* court also found that if the creditor who received no notice held a debt which represented an intentional tort that § 523(a)(3)(B) would except that debt from discharge.

4. Unlike Chapter 13, Chapter 7 directs a process of rapid liquidation of any nonexempt assets for distribution to unsecured creditors and rapid discharge of debt. In Chapter 7 general unsecured creditors have very limited options to exercise in protecting their right to payment. They may file a proof of claim, they may file a complaint to determine whether their debt is nondischarge-

able under one of the provisions of 11 U.S.C. § 523(a), or they may file a complaint under 11 U.S.C. § 727(a) to deny the discharge as to all indebtedness.

5. 11 U.S.C. § 1325(a)(6).

6. 11 U.S.C. § 1325(a)(3).

7. 11 U.S.C. § 1325(a)(4).

8. 11 U.S.C. § 1325(b).

9. 11 U.S.C. § 1329(a).

would improve or the Chapter 13 case would be dismissed.[10]

The debtor recognizes that for an allowed claim to be discharged through Chapter 13 it must be "provided for" in the plan.[11] The Ninth Circuit has defined the term "provided for" as used in several sections of Chapter 13[12] to mean that the plan must "make a provision for it, i.e., deal with it or refer to it." *In re Gregory*, 705 F.2d 1118 (9th Cir. 1983). In this case paragraph 2(d) of the debtor's plan, while not listing specific creditors by name, states that general unsecured creditors will receive no payments under the plan. The debtor contends, therefore, that, all general unsecured creditors having been "referred to" as a class by the plan terms, BOLI's unscheduled general unsecured claim was "provided for" and thus discharged through the provisions of 11 U.S.C. § 1328(a).

In *Gregory* the court held that a zero percent plan "provided for" a scheduled unsecured claim and that consequently that claim would be discharged upon completion of plan payments. In doing so the court rejected an unsecured creditor's argument that there was no difference between a zero percent plan and one which failed to acknowledge the unsecured claim, noting that

"In the former case the creditor has no ability to object, in a meaningful way, to confirmation of the debtor's plan."

*In re Gregory*, 705 F.2d at 1122.

In *In re Tomlan*, 102 B.R. 790 (E.D.Wash. 1989) the court, citing *Gregory*, picked up on this theme.

"[I]n the former case [where the process has not acknowledged the creditor] the unsecured creditor.... is not a part of the plan and hence, he may assume that the plan will not affect the obligations owing him.... [I]t would be manifestly unfair to

discharge such creditors' obligations upon the consummation of a plan which they could not contest.... On the other hand, when a debtor proposes to pay nothing to unsecured creditors the latter have notice of the possible discharge of their debt and may actively seek to obtain a denial of confirmation based upon a lack of good faith on the part of the debtor or upon other improprieties. Once confirmation occurs, these unsecured creditors may appeal the trial court's decision. Such procedural rights are denied a creditor who is completely omitted from a Chapter 13 plan."

*Id.* at 793.

■ The debtor misses the critical distinction between his facts and those in both *Gregory* and *Tomlan*. In the latter cases the creditors were included in the debtors' schedules and received notice of the Chapter 13 process. They then failed to act to preserve their rights in a timely fashion. The imperative from these cases is that the Ninth Circuit definition of "provided for" as used in Chapter 13 perforce includes notice to creditors which is sufficient to provide them with the opportunity to timely participate in the procedural rights granted to them in that chapter. In short, for purposes of Chapter 13, the seemingly unpretentious two word phrase, "provided for", encompasses the procedural due process requirements of the 5th Amendment to the United States Constitution.

I agree with the debtor that *Ford* contains language which is of relevance to the issue before me. However, the language supports BOLI's position rather than his own. In bankruptcy cases, where the parties and the court are so often focused on the minutia of financial controversy, certain language in *Ford* bears repeating.

"In a judicial proceeding, procedural due process requires that individualized notice

---

10. If I were to find the plan was not feasible or had been filed in bad faith I would dismiss the case. The creditor then would be free to pursue the debtor in a nonbankruptcy forum for the full amount of the debt. If I were to find either that the "best interest of creditors" test or the "disposable income" test had not been met the debtor would be required to increase the amount to be paid through the plan for the benefit of creditors. Finally, a creditor will ask the court to

modify a confirmed plan when it results in an increased monetary benefit to itself.

11. 11 U.S.C. § 1328(a). In contrast, with the exceptions enumerated in 11 U.S.C. § 523(a), Chapter 7 discharges all debt arising before entry of the order for relief. 11 U.S.C. § 727(b).

12. 11 U.S.C. §§ 1325(a)(5), 1327(a), 1328(a), 1329(a)(3).

be given before rights can be affected. *Texaco, Inc. v. Short,* 454 U.S. 516, 534–35, 102 S.Ct. 781, 794–95, 70 L.Ed.2d 738 (1982); *Mullane v. Central Hanover Bank & Trust Co., supra,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

The United States Supreme Court has found that the fundamental requirement of due process, the right to be heard, is meaningless without notice. *Mullane v. Central Hanover Bank & Trust Co., supra,* 339 U.S. 306, 314, 70 S.Ct. 652, 657. 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' 339 U.S. at 314, 70 S.Ct. at 657."

BOLI's claim, not having been provided for in the debtor's Chapter 13 plan, was not discharged when the court granted the debtor his discharge under 11 U.S.C. § 1328(a).

For the reasons stated, the court will deny the debtor's motion for summary judgment and grant BOLI's cross motion. This memorandum opinion contains the court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052 and they will not be separately stated.