**In re Sandra Lee WRIGHT, Debtor.**

**No. 03 B 02687.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 20, 2003.

John C. Kline, Attorney for Movant.

Sara K. Ledford, Chicago, IL, Attorney for Debtor.

Tom Vaughn, Chicago, IL, Standing Trustee.

## MEMORANDUM OPINION

JACQUELINE P. COX, Bankruptcy Judge.

At issue in this contested matter is creditor Member Advantage Credit Union's "Motion for Leave to File Proof of Claim and to Be Included in the Chapter 13 Plan." For the reasons stated below, the Court denies the motion. The Court has jurisdiction over this matter, a core proceeding, pursuant to 28 U.S.C. §§ 157(b)(2)(B) and 1334.

### Background

Chapter 13 debtor Sandra Wright filed the instant bankruptcy petition on January 21, 2003, listing Members Advantage Credit Union ("Members Advantage") as an unsecured nonpriority creditor holding a claim of $8000. Under her chapter 13 plan, the debtor proposed to pay general unsecured creditors an 85% dividend and included a special provision saying, "No payment shall be made on any general unsecured claim that is not timely filed." On April 21, 2003, the Court confirmed this plan. The docket indicates that the clerk sent Members Advantage notice of the May 19, 2003 proof of claim filing deadline at 25 East Washington, Chicago, Illinois 60602–1708. Members Advantage did not file a proof-of-claim before the deadline.

In the pending motion, Members Advantage alleges (1) that it holds a $10,606.53 deficiency claim for a loan originally secured by a vehicle (later repossessed) and (2) that the debtor listed an incorrect address for it. Furthermore, neither Members Advantage nor its counsel allegedly received actual knowledge of this chapter 13 case until May 27, 2003, when the deadlines for filing a proof of claim and for participating in the plan-confirmation process had expired. Members Advantage's motion requests "leave to file [a] proof of claim and to be included in the chapter 13 plan" pursuant to Bankruptcy Rule 7015(a).

### Discussion and Analysis

What appears to be a relatively straight-forward issue—whether a creditor can file a late proof of claim in order to correct the amount of its claim and to receive distributions from the chapter 13 bankruptcy estate—becomes much more convoluted upon further examination. This is especially true where the chapter 13 debtor schedules the creditor, but the creditor still fails to receive actual knowledge of the case in time to have any meaningful participation in it.

Bankruptcy Rule 7015(a), upon which Members Advantage relies, has no application to this dispute. That rule applies to the amendment of pleadings in adversary proceedings, and no adversary proceeding is currently pending in this bankruptcy case. *See* **Fed. R. Bankr.Pro.** 7001 (listing types of adversary proceedings) & 9014(c) (specifying that certain rules in Part VII apply to contested matters if the bankruptcy court so orders).

Instead, an appropriate beginning point for analysis is § 502 of the Code, which provides in relevant part as follows:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.

(b) ... if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in

such amount, except to the extent that—
... (9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure ...

This provision provides a basis for the disallowance of claims that would otherwise receive distributions from a chapter 13 bankruptcy estate upon the creditor's filing a proof of claim in accordance with § 501; nine bases for disallowance are listed, including the one pertaining to claims that are not timely filed.

Even before the latter provision was added in 1994, *see* Act of Oct. 22, 1994, Pub.L. 103–394, Title II, § 213(a), 108 Stat. 4125, 4134, federal courts had construed sections 501 and 502 of the Code and Bankruptcy Rule 3002 to mean that a timely filed proof of claim was a precondition to allowance; otherwise the claim was "time barred," making "disallowance" under § 502(b) in response to the debtor's or trustee's objection unnecessary. *United States v. Waindel (In re Waindel),* 65 F.3d 1307, 1312–14 (5th Cir.1995) (Duhe, J., con-

curring only in judgment); *In re Scott,* 119 B.R. 818, 819 (Bankr.M.D.Ala.1990); *In re Chavis,* 160 B.R. 804 (Bankr.S.D.Ohio 1993), *affirmed,* 47 F.3d 818 (6th Cir.1995); *In re Tucker,* 174 B.R. 732, 736, 739–41, 744 (Bankr.N.D.Ill.1994). *But see Waindel,* 65 F.3d at 1309, 1311–12 (5th Cir.1995) (majority opinion). Other courts disallowed untimely claims to which the debtor objected. *In re Glow,* 111 B.R. 209, 214, 216–19, 227 (Bankr.N.D.Ind.1990); *In re Friel,* 162 B.R. 645, 648 (Bankr.W.D.N.Y. 1994); *In re International Resorts,* 74 B.R. 428, 430 (Bankr.N.D.Ala.1987) (disallowed for untimeliness under similar provision of 1898 Bankruptcy Act). Bankruptcy Rule 3002,[1] which details the procedural mechanisms for filing proofs of claim under § 501, provides that nongovernmental creditors in chapter 7 and 13 cases generally have until 90 days after the first date set for the meeting of creditors to file proofs of claim. The deadline in this rule has been strictly construed as a sort of statute of limitations that cannot be extended for any reason except for those explicitly enumerated situations in which the bankruptcy court may extend the

1. "(c) Time for filing. In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code, except as follows:
(1) A proof of claim filed by a governmental unit is timely filed if it is filed not later than 180 days after the date of the order for relief. On motion of a governmental unit before the expiration of such period and for cause shown, the court may extend the time for filing of a claim by the governmental unit.
(2) In the interest of justice and if it will not unduly delay the administration of the case, the court may extend the time for filing a proof of claim by an infant or incompetent person or the representative of either.
(3) An unsecured claim which arises in favor of an entity or becomes allowable as a result

of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property. If the judgment imposes a liability which is not satisfied, or a duty which is not performed within such period or such further time as the court may permit, the claim shall not be allowed.
(4) A claim arising from the rejection of an executory contract or unexpired lease of the debtor may be filed within such time as the court may direct.
(5) If notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of the notice."

deadline. *SouthTrust Bankcard Ctr. v. Curenton (In re Curenton)*, 205 B.R. 967, 970 (Bankr.M.D.Ala.1995), *affirmed, Curenton v. Center*, 1997 U.S. Dist. LEXIS 6731 (M.D.Ala. Feb. 3, 1997); *In re Friel*, 162 B.R. 645, 647 (Bankr.W.D.N.Y.1994); *cf. In re International Resorts*, 74 B.R. 428, 429 (Bankr.N.D.Ala.1987) (articulating same principle regarding corresponding rule under 1898 Bankruptcy Act); *In re Tucker*, 174 B.R. 732, 735 & n. 5 (Bankr. N.D.Ill.1994) (same); *Wilkens v. Simon Brothers*, 731 F.2d 462, 464 (7th Cir.1984) (recognizing cases interpreting corresponding rule under 1898 Bankruptcy Act as a strict statute of limitations); *In re Glow*, 111 B.R. 209, 216 (Bankr.N.D.Ind. 1990) (concluding that *Wilkens* continues to apply to Rule 3002(c), even though decision was interpreting the rule's predecessor). The statute-of-limitation interpretation is not absolute for all scenarios, though, as the Seventh Circuit has limited it by distinguishing the limitations of Rule 3002 from a true statute of limitations, which "cannot be adjusted either before or after it expires. [In Rule 3002(c)], Congress's approval of an extendable deadline ... distinguishes the bar date from a statute of limitation, indicating that the court's equitable power includes authorization of late-filed claims." *Matter of Unroe*, 937 F.2d 346, 350 (7th Cir.1991). This equitable power, recognized in *Unroe*, concerning late proofs of claim was extended to the "informal proof of claim" doctrine only, which requires the debtor to have notice that the creditor *plans to assert* a particular bankruptcy claim before the bar date expires; the Seventh Circuit did not extend its holding to "entirely new" late claims, *see id.* at 350–51, such as the one Members Advantage is asserting here.

■ Moreover, the Seventh Circuit did not discuss the effect of Bankruptcy Rule 9006(b) in its discussion of the statute-of-limitations issue. This rule generally gives a bankruptcy court the authority to enlarge deadlines (such as the bar date for filing chapter 11 proofs of claim) upon a showing of excusable neglect; however, it limits extensions of time to file proofs of claim in chapter 13 cases to those situations listed in the previously described Bankruptcy Rule 3002(c). *In re Wrobel*, 197 B.R. 289, 291–95 (Bankr.N.D.Ill.1996); *Dicker v. Dye (In re Edelman)*, 237 B.R. 146, 152–53 (9th Cir. BAP 1999); *In re Mmahat*, 1994 WL 160512, *6 n. 18 (E.D.La. April 26, 1994); *In re Cash*, 51 B.R. 927, 929 (Bankr.N.D.Ala.1985); *In re Global Precious Metals*, 143 B.R. 204, 206 (Bankr.N.D.Ill.1992); *In re Tipton*, 118 B.R. 12, 13 (Bankr.D.Conn.1990); *In re Duarte*, 146 B.R. 958, 960 (Bankr.W.D.Tex. 1992); 9 **Lawrence P. King et al., Collier On Bankruptcy** ¶ 3002.03[1] (15th ed. rev. 2003). None of the grounds listed in the latter rule is relevant to this contested matter. By contrast in *Unroe*, the IRS was the creditor involved, and the exception in Bankruptcy Rule 3002(c)(1) consequently applied. Rule 3002(c)(1) permits a government entity to file a late proof of claim if such entity receives court permission before the bar date expires. Because Members Advantage could not have received leave to file a late proof of claim even if it had learned of the claims bar date before it expired, the time limitation applicable to its proof of claim is somewhat similar to a true statute of limitations.

■ The inescapable conclusion, then, is that this Court has no authority under the Bankruptcy Code or the Bankruptcy Rules to grant Members Advantage leave to file a late claim, per its request. *In re Ryan*, 78 B.R. 175 (Bankr.E.D.Tenn.1987), *affirmed*, 1990 U.S. Dist. LEXIS 6440 (E.D.Tenn. May 15, 1990); *In re Kristiniak*, 208 B.R. 132, 133–35 (Bankr.E.D.Pa. 1997); *Matter of Pack*, 105 B.R. 703, 706

(Bankr.M.D.Fla.1989). This conclusion has become clearer as a result of the 1994 amendments to the Bankruptcy Code, which settled the prior case-law disagreement by codifying the cases holding that the lateness is indeed a ground for disallowance, regardless of the reason for the lateness, unless an explicit exception applies. *See, e.g., In re Brogden,* 274 B.R. 287, 288–90, 294 (Bankr.M.D.Tenn.2001); *In re Husmann,* 276 B.R. 596, 598 (Bankr. N.D.Ill.2002); *In re Thomas,* 181 B.R. 674, 675–77 (Bankr.S.D.Ga.1995); *In re Mid–Miami Diagnostics,* 195 B.R. 20, 22 (Bankr.S.D.N.Y.1996). The special plan provision in this case prohibiting "payment . . . on any general unsecured claim that is not timely filed" could fairly be construed as the debtor's objection to the allowance of late-filed claims. Even if this Court were to grant Members Advantage's motion requesting leave to file a late proof of claim, it would be required by law to simultaneously disallow the claim under § 502(b)(9).

█ This harsh rule of law obviously does not consider whether the debtor scheduled (or otherwise notified) the late-filing creditor or whether such creditor somehow obtained actual knowledge of the bankruptcy case. The severity has caused creditors and judges to turn to other provisions of the law, the violation of which may provide some basis for relief. For instance, under the mandate of § 521(1) of the Code and Bankruptcy Rule 1007(a)(1), the debtor must accurately list all creditors. *SouthTrust Bankcard Ctr. v. Curenton (In re Curenton),* 205 B.R. 967, 970 (Bankr.M.D.Ala.1995), *affirmed, Curenton v. Center,* 1997 U.S. Dist. LEXIS 6731 (M.D.Ala. Feb. 3, 1997). The Bankruptcy Code and Rules also do not specify any particular remedy for a debtor's listing an erroneous or outdated creditor address. Under Bankruptcy Rule 2002(b), the bank-

ruptcy clerk is required to send all listed creditors at least twenty-five days notice of the confirmation hearing date for a chapter 13 plan, and under Bankruptcy Rule 2002(f) the clerk is also required to notify them of (among other events and deadlines) both the order for relief and the Rule 3002 bar date for filing claims. The address requirements for these notices are in Rule 2002(g), which gives the clerk the following order of addressee preferences: the last requested address filed in the particular case (including a proof of claim designating a specific mailing address), and then the latter of the address shown on the debtor's schedule of liabilities and that shown on his matrix list of creditors. Here, Members Advantage did not file a proof of claim or a notice request, so the bankruptcy court clerk was presumably correct in sending notices to the address that Wright listed in her bankruptcy petition and list of creditors.

█ Bankruptcy cases are nevertheless subject to the same fundamental legal requirements with which all judgments, orders, hearings, and other legal processes must comply: the Fifth Amendment to the U.S. Constitution. "No person shall . . . be deprived of life, liberty, or property, without due process of law." Some federal-court decisions that are hesitant about the severe nature of Rule 3002 merely state or imply that the proof-of-claim process is limited by the Due Process Clause without creating an exception to Rule 3002 in the pending controversy. *In re Duarte,* 146 B.R. 958, 962–63 (Bankr.W.D.Tex. 1992); *In re Thomas,* 181 B.R. 674, 677 & n. 2 (Bankr.S.D.Ga.1995); *In re Tipton,* 118 B.R. 12, 13 (Bankr.D.Conn.1990); *Matter of Pack,* 105 B.R. 703, 706 n. 1 (Bankr.M.D.Fla.1989); *In re Kristiniak,* 208 B.R. 132, 134–35 (Bankr.E.D.Pa.1997); *In re Friel,* 162 B.R. 645, 648 (Bankr. W.D.N.Y.1994); *cf. SouthTrust Bankcard*

*Ctr. v. Curenton (In re Curenton)*, 205 B.R. 967, 971 (Bankr.M.D.Ala.1995) (saying generally that the chapter 13 discharge is limited by due process considerations), *affirmed, Curenton v. Center*, 1997 U.S. Dist. LEXIS 6731 (M.D.Ala. Feb. 3, 1997). Others actually utilize it as a legal source superior to the Bankruptcy Code and Rules for allowing creditors to file late proofs of claim and thereby participate in the distributions from the bankruptcy estate. *United States v. Cardinal Mine Supply*, 916 F.2d 1087, 1089–92 (6th Cir. 1990) (allowing IRS's tardy chapter 7 priority claims under theory of fundamental fairness and supposing same result for private party under due process theory); *In re Barnett*, 42 B.R. 254, 256–57 (Bankr. S.D.N.Y.1984); *In re Anderson*, 159 B.R. 830, 836–40 (Bankr.N.D.Ill.1993); *In re Avery*, 134 B.R. 447, 448–49 (Bankr. N.D.Ga.1991) (using Due Process Clause and § 105(a) of Code to create equitable exception). For example, in *Anderson*, prior to the petition date, the Illinois Department of Revenue ("IDR") had served the debtor with complaints pertaining to his liability for retailers' use and occupation taxes as the owner and operator of the sole proprietorship "Lucky Liquors." *See id.* at 832. In spite of his knowledge of these pending lawsuits, the debtor's petition failed to list them, to schedule the IDR's related debts, and to disclose the name and tax number for his sole proprietorship, while scheduling the IDR merely as a creditor holding his personal income tax claims. *See id.* Furthermore, the court found that because the IDR did not have adequate notice that any nexus connected the pending "Lucky Liquors" litigation with the debtor's chapter 13 case, the debtor's objection to its untimely proof of claim under Rule 3002 could not be constitutionally sustained under the Fifth Amendment (and related fundamental fairness principles applicable to governments),

at least not where the debtor's gamesmanship was responsible for causing the IDR to miss the proof-of-claim deadline. *See id.* at 839. Overruling the debtor's claim objection, Judge Schmetterer held that the IDR was a scheduled creditor with actual notice of the chapter 13 case only with regard to the timely filed claims but not with respect to the untimely claims, which he permitted it to file past the claims bar date. *But cf. In re Wrobel*, 197 B.R. 289, 295 n. 7 (Bankr.N.D.Ill.1996) (interpreting *Anderson* as finding the authority to allow late-filed proofs of claim only in the general provision 11 U.S.C. § 105(a) and stating that another section of the Code in addition to § 105(a) would be necessary to justify the ruling on this issue).

■ These Due Process Clause cases invariably point out the language from the Supreme Court opinion *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), saying, "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657. Thus, notice complying with due process principles does not need to be absolutely perfect; it must merely be reasonably calculated to inform. In one instance, a creditor's failure to receive an improperly addressed formal notice of the claims bar date was not deemed a denial of due process when the creditor's attorney had in fact received a reasonable actual notice of the pendency of the overall bankruptcy case, which was deemed "reasonably calculated" to inform the creditor of the different types of deadlines that a bankruptcy case would normally entail. *In re Glow*, 111 B.R. 209, 219 (Bankr.

N.D.Ind.1990); *see also In re Duarte,* 146 B.R. 958, 962–63 (Bankr.W.D.Tex.1992); *cf. Green Tree Fin. Servicing Corp. v. Karbel (In re Karbel),* 220 B.R. 108, 113–14 (10th Cir. BAP 1998) (notice was reasonably calculated even though creditor had no actual knowledge of bankruptcy case, because creditor provided court clerk a standard address and then mishandled notice it received at such address).

■ In the present situation, Members Advantage apparently did not obtain actual knowledge of the pendency of the case until its procedural rights had expired; therefore, it did not receive due process in the form of having constructive notice of the claims bar date. Still, Wright's inclusion of Members Advantage on the creditors' mailing matrix using what she apparently believed to be Members Advantage's last known address may have in fact been "reasonably calculated" to inform it of the alteration of its contractual rights through this chapter 13 case. The Court has no evidentiary record before it from which it can make this finding, so the party with the burden—the movant Members Advantage—cannot prevail on this issue.

■ More importantly, though, the Due Process Clause does not provide an equitable exception to the otherwise strict terms of the chapter 13 claims bar date because the Bankruptcy Code, when construed as a whole, provides other forms of relief to creditors who do not have actual knowledge of a bankruptcy case in time to

exercise procedural rights essential for protecting its claim. *In re Brogden,* 274 B.R. 287, 288, 293–94 (Bankr.M.D.Tenn. 2001); *cf. In re Tipton,* 118 B.R. 12, 14 (Bankr.D.Conn.1990); *In re Global Precious Metals,* 143 B.R. 204, 206–07 (Bankr. N.D.Ill.1992) (reaching same conclusion in chapter 7 case where creditor not even listed on liability schedules and did not otherwise learn of case until claims bar date passed). At least six other potential forms of relief have been identified and may be useful in chapter 13 cases.

### 1. Possible Incorporation of § 726(a) Exception by Means of § 1325(a)(4)

■ The first one is the most problematic one. It surprisingly derives directly from § 502(b)(9): "the court ... shall allow such claim ... except to the extent that—... (9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure."[2] Thus, § 502(b)(9) permits the allowance of late claims to the extent that they are permitted by § 726(a)—the section setting forth the chapter 7 distribution scheme. The latter provision, which is apparently only applicable to chapter 7 cases according to § 103(b), permits bankruptcy-estate distributions to late-filing priority and nonpriority creditors if certain criteria are fulfilled.[3] Because general

---

**2.** The exceptions in Federal Rule of Bankruptcy Procedure 3002 are not applicable to this contested matter, as mentioned above.

**3.** "(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or

tardily filed before the date on which the trustee commences distribution under this section;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

unsecured creditors in such cases usually receive pennies on the dollar for the claims, the difference between § 726(a)(2) and (a)(3) is often the difference between receiving a *pro rata* dividend from the trustee and receiving nothing at all. The difference hinges on 1) whether the creditor had notice or actual knowledge of the case in time to file a timely proof of claim and 2) whether the tardy claim was filed early enough to enable the trustee to dole out the estate distributions to all creditors at once.

 The reason that some courts have assumed that § 726(a) has relevance to chapter 13 cases is that § 1325(a)(4), which contains the "best interests of creditors test" for the confirmation of chapter 13 plans, requires that chapter 13 plans pay allowed unsecured claims an amount in present-value terms that "is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." While this section does not explicitly refer to § 726(a), no other section of chapter 7 could really be used to calculate a creditor's distribution under a hypothetical chapter 7. The question, then, is to what degree and for what purpose § 1325(a)(4) incorporates the specific terms of § 726(a). If the answer is that it completely incorporates § 726(a), then the exception permitting tardily filing credi-

tors (who otherwise meet the two criteria) to share in bankruptcy-estate distributions would provide relief to chapter 13 creditors who do not learn of the case's existence until the most significant procedural rights have lapsed. This relief could alleviate any Due Process Clause concerns.

While courts have concluded that § 1325(a)(4) does completely incorporate § 726(a), *United States v. Waindel (In re Waindel),* 65 F.3d 1307, 1310 (5th Cir. 1995), others have disagreed because the reference in § 1325(a)(4) is too general, *Waindel,* 65 F.3d at 1313–14 (Duhe, J., concurring only in judgment), and several others have stated that § 726(a) has no relevance in chapter 13 cases without considering the § 1325(a)(4) problem, *see In re Husmann,* 276 B.R. 596, 597–98 (Bankr. N.D.Ill.2002) (holding that § 726(a) does not apply to chapter 13 cases by virtue of § 502(b)(9), which otherwise disallows late claims in a case under any chapter); *In re Tucker,* 174 B.R. 732, 741–42 (Bankr. N.D.Ill.1994). The disagreeing courts have reasoned that the different objectives of chapter 7 and 13 cases require the conclusion that late-filed claims allowable pursuant to § 726(a) are not allowable in chapter 13 cases. That is, chapter 7 cases generally involve an attempt to efficiently liquidate and distribute all of a debtor's nonexempt assets, while chapter 13 cases immediately require a debtor to make

(**C**) tardily filed under section 501(a) of this title, if—
 (**i**) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and
 (**ii**) proof of such claim is filed in time to permit payment of such claim;
(**3**) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;

(**4**) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;
(**5**) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and
(**6**) sixth, to the debtor."

monthly payments toward a three-to-five-year payment plan, *see* 11 U.S.C. § 1326(a). *See In re Chavis*, 160 B.R. 804 (Bankr.S.D.Ohio 1993), *affirmed*, 47 F.3d 818 (6th Cir.1995). The fixed payment plan eventually requires court confirmation and a concomitant finding of feasibility—albeit within an indefinite time frame during the initial stage of the case. *See generally* 11 U.S.C. § 1325(a). Supposedly, chapter 13 cases require a rapid and efficient claims-allowance procedure so that 1) the plan-confirmation hearing will make ascertainable whether the plan is feasible and comports with the "best interests of creditors test" and 2) the trustee may begin making plan-payment distributions to creditors, who ought to be protected from having to disgorge money to tardily filing claimants. *See* 11 U.S.C. § 1326(b)-(c); *In re Waindel*, 65 F.3d 1307, 1313 (5th Cir. 1995) (Duhe, J., concurring only in judgment); *In re Chavis*, 160 B.R. 804 (Bankr. S.D.Ohio 1993), *affirmed*, 47 F.3d 818 (6th Cir.1995); *In re Husmann*, 276 B.R. 596, 598 (Bankr.N.D.Ill.2002); *In re Tucker*, 174 B.R. 732, 743 (Bankr.N.D.Ill.1994). Chapter 7 cases, on the other hand, present no urgent need for administrative efficiency in getting a payment plan off the ground. And, because a late-filing creditor who still files before the estate is disbursed poses little complication to the administration of the estate, such creditor

equitably should receive a distribution before any excess assets are returned to the debtor, *see* 11 U.S.C. § 726(a)(2)-(3), (6), and the exception for the allowance of late claims in chapter 7 cases is thus warranted. *See In re Waindel*, 65 F.3d 1307, 1314 (5th Cir.1995) (Duhe, J., concurring only in judgment); *In re Husmann*, 276 B.R. 596, 598 (Bankr.N.D.Ill.2002); *In re Tucker*, 174 B.R. 732, 742-43 (Bankr.N.D.Ill.1994).

While the conclusion reached by this latter line of cases (that § 1325(a)(4) does not effect a wholesale incorporation of § 726) is correct, the reasoning underlying it is somewhat flawed. In fact, there is no real policy or pragmatic reason why late-filed general unsecured chapter 13 claims that are filed before other similar creditors get plan dividends should be considered fundamentally different from late-filed general unsecured chapter 7 claims. As some bankruptcy courts have recognized, chapter 13 plan confirmation often occurs before the bar date for filing claims.[4] *See In re Fareed*, 262 B.R. 761, 769-70 (Bankr. N.D.Ill.2001);[5] *Dixon v. United States ex rel. IRS (In re Dixon)*, 210 B.R. 610, 616 (Bankr.W.D.Okla.1997), *affirmed*, 218 B.R. 150 (10th Cir. BAP 1998); *e.g.*, *In re Avery*, 134 B.R. 447, 448 (Bankr.N.D.Ga. 1991); *cf. Adair v. Sherman*, 230 F.3d 890, 895 n. 4 (7th Cir.2000) ("We need not

**4.** In a chapter 13 case, a proof of claim may be filed within 90 days after the first date set for the creditors' meeting. *See* **Fed. R. Bankr.Pro.** 3002(c). Any objection to the allowance of the claim must be mailed or delivered at least 30 days prior to the hearing on the objection. *See* **Fed. R. Bankr.Pro.** 3007. Thus, a contested matter involving a claim objection could very well happen more than 120 days after the date set for the creditors' meeting, and by that time, the chapter 13 debtor's proposed plan may have been confirmed. *In re Fareed*, 262 B.R. 761, 770 (Bankr.N.D.Ill.2001).

**5.** "[A] requirement that the allowance of claims under § 502 be fully adjudicated at the time of confirmation is not practicable, and would substantially delay confirmation and creditor payment. Unsecured claims against a debtor are often numerous and of small, but uncertain, amount; Chapter 13 plans therefore generally rely on the creditors' proofs of claim to indicate the amount of each claim owing, and then direct that unsecured claims be paid pro rata from funds available after higher priority claims are paid. It would be unrealistic to expect a debtor's plan to assert a separate value for each unsecured claim." *Fareed*, 262 B.R. at 770.

address the practice in bankruptcy courts of allowing proofs of claims to be filed after confirmation. *See, e.g., In re Witkowski*, 16 F.3d 739, 741 (7th Cir.1994); *In re Strong*, 203 B.R. 105, 114 (Bankr. N.D.Ill.1996).") Furthermore, the feasibility of the plan and its compliance with the "best interests of creditors test" under § 1325(a) are often estimated at the time of confirmation without knowing what the total amount of allowed claims will ultimately be. If substantial problems subsequently arise, the trustee can move for modification under § 1329, which can be utilized to adjust plan payments before dismissal of the case is warranted for failure to make plan payments. These possibilities undermine the argument that chapter 13 cases present a more urgent need to exclude late proof-of-claim filers.

Moreover, many late-filing general unsecured chapter 13 creditors could, as a practical matter, still file in time to share in estate distributions, because short-term secured creditors and priority unsecured creditors must normally be paid in full through monthly plan payments, 11 U.S.C. § 1325(a)(5)(B), § 1322(a)(2), before general unsecured creditors receive a dime. The trustee sends distributions to general unsecured creditors *at the end of the plan term* according to § 1326(b), which requires the debtor's payments to first be allocated toward administrative claims (including the debtor's attorney's fees), as well as a provision in most chapter 13 plans listing the order of priority (sections "E" and "F" of the Model Chapter 13 Plan for the Northern District of Illinois). Thus, the possibility that assets could be (or should be) distributed to late–filing general unsecured creditors before being returned to debtors does not distinguish chapter 7 cases from chapter 13 cases, *see, e.g., Matter of Pack*, 105 B.R. 703, 706 n. 3 (Bankr.M.D.Fla.1989), and thus does not inform the issue of § 726(a)'s incorporation

into chapter 13 cases by virtue of § 1325(a)(4).

While some portion of § 726(a) necessarily must be incorporated into § 1325(a)(4), the exception in § 726(a)(2) permitting late-filing chapter 7 creditors to share the same priority as other general unsecured creditors, nevertheless, is not incorporated into chapter 13. *Cf. In re Brogden*, 274 B.R. 287, 289–90 (Bankr. M.D.Tenn.2001); 8 **Lawrence P. King et al., Collier On Bankruptcy** ¶ 1325.05[2] (15th ed. rev.2003). First, when Congress intends to incorporate a specific portion of chapter 7 into chapter 13 provisions, it knows how to do so clearly. *See, e.g.*, 11 U.S.C. § § 1302, 1304. Section 1325(a)(4) contains no clear reference to § 726(a), only an implicit and indefinite one. Second, application of the § 726(a)(2)(C) exception to chapter 13 cases creates a host of new problems and ambiguities which reveal that Congress probably never intended to effect a wholesale incorporation of § 726(a) into chapter 13. The exception depends in part on whether "proof of such claim is filed in time to permit payment of such claim" in a chapter 7 case, 11 U.S.C. § 726(a)(2)(C)(ii), but the related chapter 13 provision, § 1325(a)(4), only refers to a hypothetical chapter 7 case. In order to determine whether the claim has been filed "in time to permit payment," should the Court look at 1) whether the late-filing chapter 13 creditor would still be able to receive a distribution in a hypothetical chapter 7 liquidation, 2) whether the chapter 13 trustee has begun disbursing any plan payments (priority or otherwise) after plan confirmation, or 3) whether the chapter 13 trustee has begun disbursing payments to the particular class to which the late-filing creditor belongs? Although the exception is itself contained in the chapter 7 provision § 726(a), a fact favoring interpretation number one, the time and effort

spent estimating the timing of events in a hypothetical liquidation would be impractical, time consuming, and unduly speculative.

Overall, then, the best conclusion is that § 1325(a)(4) incorporates the priority scheme of § 726(a) only at the most general level, leaving out the specific exception for late-filing creditors in § 726(a)(2)(C). While § 726(a) may alleviate due process concerns in chapter 7 cases, *In re Global Precious Metals,* 143 B.R. 204, 206–07 (Bankr.N.D.Ill.1992), it does not do so in chapter 13 cases.

### 2. Modification of the Automatic Stay for "Cause"

 The second portion of the Bankruptcy Code that rectifies any due process concerns raised by the severe and inflexible nature of the claims-allowance procedure is § 362(d)(1), which empowers the Court to grant relief from the automatic stay of § 362(a) for "cause." To determine whether relief from stay is warranted, courts consider such factors as interference with the bankruptcy case; the relative hardship and prejudice to the creditor/movant, to other creditors (i.e., the bankruptcy estate), and to the debtor from granting or not granting relief; the good or bad faith of the debtor; and the creditor/movant's likelihood of success on the merits (if applicable). *In re Wrobel,* 197 B.R. 289, 296 (Bankr.N.D.Ill.1996); *In re Blue,* 247 B.R. 748, 752 (Bankr.N.D.Ill. 2000). The Seventh Circuit has instructed that relief is appropriate when "equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems." *International Business Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.),* 938 F.2d 731, 735 (7th Cir.1991). Bankruptcy courts have modified the stay when a debtor's failure to schedule or list a credi-

tor prevented it from filing a proof of claim and thereby participating in the bankruptcy case. *See In re Wrobel,* 197 B.R. 289, 296 (Bankr.N.D.Ill.1996) (finding "cause" to lift the stay where debtor violated state-court order, incurring criminal-contempt sanction in the form of attorneys' fees, and then did not schedule or notify the opposing attorney of her chapter 13 case until after it was too late for her to file a claim and participate in the debtor's plan payments); *In re Kristiniak,* 208 B.R. 132, 135–36 (Bankr.E.D.Pa. 1997); *cf. In re Brogden,* 274 B.R. 287, 293 (Bankr.M.D.Tenn.2001); *In re Cash,* 51 B.R. 927, 929 (Bankr.N.D.Ala.1985). Relief from the stay normally restores the creditor to all of its pre-petition collections rights and remedies. *In re Brogden,* 274 B.R. 287, 293 (Bankr.M.D.Tenn. 2001).

 Whether relief from the automatic stay is appropriate in this particular case will depend on the above considerations, including the debtor's reason for listing the wrong address for Members Advantage, the care with which she attempted to complete her lists and schedules, the point in time and manner in which Members Advantage learned of the case's existence, and the possibility that Members Advantage's collection of the debt in state court will interfere with the debtor's plan payments. No evidentiary record from which the Court can make these determinations exists at this time. Furthermore, the stay relief possibility is significant only because its bears upon the constitutionality of the otherwise strict rules pertaining to the claims-allowance process in chapter 13 cases.

### 3. Nondischargeability of Debt for Which Creditor Did Not Receive Bar–Date Notice

 A creditor who knows nothing about a chapter 13 bankruptcy case in time

to file a proof of claim may alternatively receive due process of law when such case is closed. Under certain circumstances, he may be entitled to continue collection efforts in spite of the discharge injunction. Upon completion of chapter 13 plan payments, a debtor receives a "super discharge" that alleviates the debtor of all but five types of debts, including all but three of the types that are normally "excepted" from discharge by virtue of § 523(a).[6] One of the exceptions that does not apply to chapter 13 cases is the one for debts that are not listed or scheduled "in time to permit ... timely filing of a proof of claim" and for which the creditor does not otherwise have actual knowledge concerning the cases's pendency. *See* 11 U.S.C. § § 523(a)(3), 1328(a); *IRS v. Hairopoulos (In re Hairopoulos)*, 118 F.3d 1240, 1246 (8th Cir.1997); *Matter of Pack*, 105 B.R. 703, 705 (Bankr.M.D.Fla.1989); *In re Gamble*, 85 B.R. 150, 151 (Bankr.N.D.Ala. 1988). Nonetheless, a creditor can achieve a result similar to § 523(a)(3) by relying on the language of § 1328(a) itself, which generally provides that the debtor will receive "a discharge of all debts provided for by the plan or disallowed under section 502 of this title." *In re Ryan*, 78 B.R. 175, 182 (Bankr.E.D.Tenn.1987), *affirmed*, 1990 U.S. Dist. LEXIS 6440 (E.D.Tenn. May 15, 1990). That is, when a debtor completely ignores a creditor in his chapter 13 plan, schedules, and creditor matrix, the plan cannot reasonably be said to have "provided for" such creditor's debt.

 Numerous court opinions have attempted to flesh out the contours of how a plan "provides for" a debt such that the debtor's completion of the plan discharges the debt. Some opinions have seemed to say that a debt is "provided for" and therefore discharged under § 1328(a) if the chapter 13 plan deals with a category of debts such that a creditor's choosing to file a proof of claim would have entitled it to payment under the plan—even if the debtor nowhere refers to the creditor by name in the plan itself. *In re Leber*, 134 B.R. 911, 912–13, 915 (Bankr.N.D.Ill.1991). This test raises the question of where a debtor must list a creditor in order to "provide for" its debt, since Chapter 13 plans themselves often do not name specific priority and nonpriority unsecured creditors. They merely provide that priority unsecured creditors will be paid in full and that nonpriority ones will be paid a given percentage. *See, e.g., IRS v. Hairopoulos (In re Hairopoulos)*, 118 F.3d 1240, 1242–43 & n. 2 (8th Cir.1997); *In re Ryan*, 78 B.R. 175, 177–78 (Bankr.E.D.Tenn.1987), *affirmed*, 1990 U.S. Dist. LEXIS 6440 (E.D.Tenn. May 15, 1990); *Crites v. Oregon ex rel. Roberts (In re Crites)*, 201 B.R. 277, 281 (Bankr.D.Or.1996). *But cf., e.g., Matter of Pack*, 105 B.R. 703, 705–06 (Bankr.M.D.Fla.1989). The different results in various cases, though, usually hinge more on whether the creditor had actual knowledge of the pendency of the chapter 13 case in time to participate in a meaningful way in the plan-confirmation procedural rights than on whether the debtor scheduled the creditor. Thus, even an unscheduled prepetition creditor can be deemed "provided for" if it somehow obtains *actual knowledge of the pendency of the bankruptcy case* in time to file a proof of claim and object to plan confirmation;[7]

---

6. Occasionally, some bankruptcy courts have mistakenly stated that certain types of debts are excepted from discharge by § 523(a) in chapter 13 cases, when in reality they are or would be discharged by the debtor's completion of plan payments. *See, e.g., In re Glow*,

111 B.R. 209, 217 (Bankr.N.D.Ind.1990); *In re Barnett*, 42 B.R. 254, 257 (Bankr.S.D.N.Y. 1984).

7. This situation arose often back in the day when bankruptcy court clerks automatically

such a creditor cannot bypass the chapter 13 process and then choose to collect the debt when the case is closed. *In re Leber*, 134 B.R. 911, 915–16 (Bankr.N.D.Ill.1991); *Crites v. Oregon ex rel. Roberts (In re Crites)*, 201 B.R. 277, 279 (Bankr.D.Or. 1996); *In re Ryan*, 78 B.R. 175, 176, 182–84 (Bankr.E.D.Tenn.1987), *affirmed*, 1990 U.S. Dist. LEXIS 6440 (E.D.Tenn. May 15, 1990). Similarly, a creditor who belongs to a class receiving a zero-percent dividend under the plan but who received notice of the case in time to challenge the plan payments under § 1325 of the Code is also "provided for." *Matter of Gregory*, 705 F.2d 1118, 1122 (9th Cir.1983); *In re Glow*, 111 B.R. 209, 219–20 (Bankr. N.D.Ind.1990); *In re Tipton*, 118 B.R. 12, 14 (Bankr.D.Conn.1990). On the other hand, an unscheduled creditor who does not have actual knowledge of the case and who thus cannot file a timely proof of claim under Rule 3002 or object to confirmation on grounds listed in § 1322 or § 1325 of the Code cannot be deemed "provided for." *In re Leber*, 134 B.R. 911, 916 (Bankr. N.D.Ill.1991); *Crites v. Oregon ex rel. Roberts (In re Crites)*, 201 B.R. 277, 278–81 (Bankr.D.Or.1996); *In re Ryan*, 78 B.R. 175, 183 (Bankr.E.D.Tenn.1987), *affirmed*, 1990 U.S. Dist. LEXIS 6440 (E.D.Tenn. May 15, 1990); *Matter of Pack*, 105 B.R. 703, 705–06 (Bankr.M.D.Fla.1989); *In re Scott*, 119 B.R. 818, 818–19 (Bankr. M.D.Ala.1990); *In re Cash*, 51 B.R. 927, 928–29 (Bankr.N.D.Ala.1985); *Matter of Dunn*, 83 B.R. 694, 694, 696 (Bankr. D.Neb.1988); *In re Tipton*, 118 B.R. 12, 13–14 (Bankr.D.Conn.1990); cf. *In re Stewart*, 190 B.R. 846, 850 (Bankr. C.D.Ill.1996); *In re Brogden*, 274 B.R. 287, 294 (Bankr.M.D.Tenn.2001).

The more difficult fourth scenario presented here, though, is the one where the creditor is scheduled but, due to the debtor's listing an erroneous or outdated address or other failure, never obtains actual knowledge of the case in time to file a proof of claim or object to confirmation. The result in the fourth scenario should be a finding that the creditor was not "provided for," just as in the third scenario, because *actual notice* is the most fundamental factor involved. *Cf. South-Trust Bankcard Ctr. v. Curenton (In re Curenton)*, 205 B.R. 967, 968–69, 971 (Bankr.M.D.Ala.1995) (creditor not "provided for" where debtor mistakenly listed address of a sister subsidiary corporation instead of bank holding the late-filed claim), *affirmed, Curenton v. Center*, 1997 U.S. Dist. LEXIS 6731 (M.D.Ala. Feb. 3, 1997); *IRS v. Hairopoulos (In re Hairopoulos)*, 118 F.3d 1240, 1242–44, 1246 (8th Cir.1997) (holding that IRS's claim not discharged by a chapter 13 plan completion, even though it was originally scheduled and aware of the debtor's initial *no-asset chapter 7 filing*, where IRS received neither actual nor inquiry notice of the conversion to chapter 13, the confirmation hearing, and the subsequently added proof-of-claim bar date), *aff'g* 193 B.R. 889, 891–94 (E.D.Mo.1996) (same); *In re Gamble*, 85 B.R. 150, 151–52 (Bankr.N.D.Ala. 1988) (although debtor scheduled credit card company, it was not "provided for" because debtor caused it to miss claims bar date by failing to list former names that were necessary to truly provide adequate notice of chapter 13 debtor's identity); *In re Avery*, 134 B.R. 447, 448–49 (Bankr.N.D.Ga.1991) (stating that IRS's claim would not be discharged upon plan completion, even though scheduled, be-

---

sent the IRS or the Illinois Department of Revenue notice of chapter 13 cases regardless of whether the debtor scheduled either one as a creditor. *In re Leber*, 134 B.R. 911, 912 (Bankr.N.D.Ill.1991); *In re Ryan*, 78 B.R. 175, 176, 182 (Bankr.E.D.Tenn.1987), *affirmed*, 1990 U.S. Dist. LEXIS 6440 (E.D.Tenn. May 15, 1990).

cause court clerk did not include it in notice of chapter 13 case sent to creditors, but later saying the issue of discharge was premature). As one court aptly commented,

> [F]or purposes of Chapter 13, the seemingly unpretentious two[-]word phrase, "provided for", encompasses the procedural due process requirements of the 5th Amendment to the United States Constitution. . . .
>
> The United States Supreme Court has found that the fundamental requirement of due process, the right to be heard, is meaningless without notice. *Mullane v. Central Hanover Bank & Trust Co.*, *supra*, 339 U.S. 306, 314, 70 S.Ct. 652, 657. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314, 70 S.Ct. at 657.

*Crites v. Oregon ex rel. Roberts (In re Crites)*, 201 B.R. 277, 281–82 (Bankr.D.Or. 1996). This passage brings us back to the earlier question presented: whether Wright's notice was reasonably calculated to inform Members Advantage of the case's existence. Once again, the eviden-

tiary record here is too sparse to conclude that either Wright or the clerk of the court did or did not make a reasonably calculated attempt to inform Members Advantage that its contractual rights to payment were being affected; likewise it is too sparse to pass on the dischargeability of such debt under § 1328(a) at this juncture. The existence of this possibility, though, bears upon the constitutionality of the otherwise strict and unforgiving nature of the claims-allowance procedure.[8]

As one final matter on the issue of § 1328(a)'s operation, late-filing creditors would be well advised to carefully observe the language of the chapter 13 discharge provision and the (probably unintended) side effect of the 1994 amendment to § 502(b). Technically, the law provides that a completed chapter 13 plan discharges a debt either if 1) the plan "provides for" such debt (as discussed *supra*) **or** if 2) the related claim is disallowed pursuant to § 502. *See* 11 U.S.C. § 1328(a). Because § 502(b)(9) now provides the basis for "disallowing" late-filed claims in chapter 13 cases, such a claim should be legally discharged under § 1328(a) because it has been "disallowed,"[9] even if the creditor knew nothing about the case until the claims bar date had passed. Creditors who miss the chapter 13 claims bar date would be well advised to avoid filing the claim altogether, because only a *filed* proof

---

**8.** Where creditors have failed to receive notice of other types of bar dates, courts have declined to find a Fifth Amendment transgression where (1) the creditors had actual knowledge of the existence of the overall bankruptcy *case* and (2) the debtors' listings of creditors' addresses were reasonably calculated to inform the creditors, even though the particular bar-date notices at issue ended up being technically defective for reasons beyond the control of the debtors. *See Green Tree Fin. Servicing Corp. v. Karbel (In re Karbel)*, 220 B.R. 108, 111–14 (10th Cir. BAP 1998) (missed bar date for filing objection to confirmation and a motion to value collateral); *In*

*re Rockmacher*, 125 B.R. 380, 384 (S.D.N.Y. 1991) (missed bar date for filing complaint to determine dischargeability of particular debt).

**9.** A couple of published decisions have overlooked this consideration and have incorrectly found that a disallowed late-filed claim was not covered by the chapter 13 discharge injunction. *SouthTrust Bankcard Ctr. v. Curenton (In re Curenton)*, 205 B.R. 967, 971 (Bankr.M.D.Ala.1995), *affirmed, Curenton v. Center*, 1997 U.S. Dist. LEXIS 6731 (M.D.Ala. Feb. 3, 1997); *In re Scott*, 119 B.R. 818, 819 (Bankr.M.D.Ala.1990).

of claim to which a party in interest objects can be disallowed, see 11 U.S.C. § § 501, 502, and then discharged. *See In re Tipton,* 118 B.R. 12, 14 (Bankr.D.Conn. 1990). Rather, they would be better off by requesting relief from the automatic stay or by arguing that their debt was not "provided for" when the discharge injunction emerges. A creditor could take the risk of filing the late proof of claim and hoping that no party in interest will object, but even if successful, the creditor will likely then be paid only a percentage of its claim—rather than being able to pursue the full amount after the bankruptcy court issues automatic-stay relief or after the narrower discharge injunction replaces the automatic stay.

In this case, Members Advantage is only requesting leave to file a late proof of claim; it has not already done so. Thus, the possibility that its debt may pass through the discharge of § 1328(a) remains viable.

### 4. Conversion or Dismissal of the Case Under § 1307(c)

A chapter 13 case may be dismissed or converted to a chapter 7 (which incorporates the usual exceptions to discharged debts, such as the aforementioned § 523(a)(3)) for "cause," including a failure to notify creditors of the bankruptcy in certain circumstances. *In re Brogden,* 274 B.R. 287, 293 (Bankr.M.D.Tenn.2001). An intentional failure to schedule a creditor or to list his proper address would most likely constitute "cause." Whether an unintentional but negligent failure to perform these duties would constitute "cause" is an open question, but the § 1307 remedy seems rather drastic for this situation, especially if the debtor has been faithfully making plan payments for some time. Like relief from the automatic stay, a dismissal would leave the creditor in a better position than claim allowance because the

creditor would be returned to its pre-petition collection rights and remedies, *In re Brogden,* 274 B.R. 287, 289–90 (Bankr. M.D.Tenn.2001), and this result is more than consistent with the creditor's due process rights with regard to its bankruptcy claim.

### 5. Revocation of the Confirmation Order or Relief from a Final Judgment or Order

If the grounds in § 1330 of the Code (fraud presented within 180 days of the confirmation order) or more generally in Bankruptcy Rule 9024 (mistake, surprise, excusable neglect, newly discovered evidence, or fraud presented within one year of the final order) are present, the creditor may be relieved of the confirmation order, forcing the debtor to present a new plan. *In re Brogden,* 274 B.R. 287, 293–94 (Bankr.M.D.Tenn.2001). Relief under Bankruptcy Rule 9024 is extraordinary and should be reserved for truly special circumstances. *Green Tree Fin. Servicing Corp. v. Karbel (In re Karbel),* 220 B.R. 108, 113 (10th Cir. BAP 1998). If its claim had already been disallowed as a tardy claim under § 502(b)(9), the creditor may need to procure a special plan provision for the payment of such claims.

No grounds justifying this form of relief have been presented in this contested matter.

### 6. Filing a Proof of Claim on Behalf of the Tardily Filing Creditor by Trustee

Under Bankruptcy Rule 3004 and § 501(c) of the Code, the standing chapter 13 trustee could file a proof of claim on behalf of a creditor who missed the claims bar date, but only within thirty days after the expiration of the first claims bar date. This option is useful if the creditor realizes it has missed the deadline shortly after it expires and then notifies the trustee in

time to enable the trustee to meet the next deadline. Nonetheless, the option still bears upon the fundamental fairness of the strict rules for claims bar dates in chapter 13 bankruptcy cases. *In re Global Precious Metals,* 143 B.R. 204, 206–07 (Bankr. N.D.Ill.1992).

Here, this option is no longer available, as the thirty-day deadline for the standing trustee has passed.

### Conclusion

Consistent with due-process-of-law principles, the Court must deny Members Advantage's motion for leave to file a tardy proof of claim in this chapter 13 case, although the result has surprised this Court and other courts, *see, e.g., In re Kristiniak,* 208 B.R. 132, 132, 136 (Bankr. E.D.Pa.1997). Other options are potentially more favorable to Members Advantage than filing a late proof of claim.

The dispute concerning the amount of the claim is now moot because Members Advantage cannot file a proof of claim.

A separate order consistent with this opinion will issue pursuant to Bankruptcy Rule 9021.